# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 2, 2010

No. 09-40004

Charles R. Fulbruge III
Clerk

RONAL PORFIRIO ORDONEZ OROSCO

Petitioner-Appellant

v.

JANET NAPOLITANO, Secretary of the Department of Homeland Security;
EDUARDO LOZANO, Immigration and Customs Enforcement Officer;
UNNAMED SUPERVISORY IMMIGRATION AND CUSTOMS
ENFORCEMENT OFFICERS; and THE UNITED STATES OF AMERICA

Respondents-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before GARWOOD, WIENER, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

The Victims of Trafficking and Violence Protection Act of 2000 (VTVPA) amended the Immigration and Nationality Act (INA) in part to create a new type of visa, known as a "U-Visa."  VTVPA, Pub. L. No. 106-386, 114 Stat. 1464 (Oct. 28, 2000).  U-Visas can be granted to victims of certain listed crimes who later help United States law enforcement officials investigate or prosecute those crimes.  8 U.S.C.A. § 1101(a)(15)(U)(i) (West 2005 & Supp. 2009).  In order to obtain a U-Visa, an alien who was the victim of an enumerated crime must obtain a "certification" from law enforcement officials

confirming that he was helpful to the investigation or prosecution of the crime.  8 U.S.C.A. § 1184(p)(1) (West 2005).  The parties in this case refer to this certification as a "law enforcement certification," which we abbreviate "LEC."

Plaintiff-appellant, Ronal Porfirio Ordoñez Orosco (Ordoñez), sued defendants-appellees, Janet Napolitano, Secretary of the Department of Homeland Security, Eduardo Lozano, an officer with United States Immigration and Customs Enforcement (ICE), unnamed supervisory ICE officers, and the United States of America.  Ordoñez sought a writ of habeas corpus to compel the defendants to issue him an LEC under 28 U.S.C. § 2241, as well as declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Mandamus and Venue Act (Mandamus Act), 28 U.S.C. § 1361, the Federal Question Statute, 28 U.S.C. § 1331, and the Administrative Procedures Act (APA), 5 U.S.C. § 704.  Specifically, his claims for declaratory and injunctive relief sought to enjoin the use of 8 C.F.R. §§ 212.17(a) and 214(a)(14)(iii) and to enjoin the defendants from informing local law enforcement agencies that they were not required to issue LECs on demand.  Finally, he asked the district court to certify a class action.

The defendants moved to dismiss.  The district court granted the motion, because it found that a law enforcement agency's decision to issue an LEC is discretionary.  Ordoñez timely appealed.  For the reasons discussed below, we affirm.

### FACTS AND PROCEEDINGS BELOW

Ordoñez and his brother reentered the United States illegally in April 2007 with the help of smugglers.  The smugglers abandoned the brothers on a ranch near Falfurrias, Texas.  Ordoñez's brother died of exhaustion, exposure to the elements, or heat stroke after the two wandered for three days.  Orosco

survived and was subsequently apprehended by officers of United States Customs and Border Protection, whom he told about his brother's death. Subsequently, he sought an LEC from multiple state, local, and federal officials on the ground that he was a victim of trafficking who had provided valuable information to law enforcement officials.  All of the officials he contacted refused to provide him with one.

Ordoñez filed suit against the defendants on October 3, 2007, seeking to compel them to provide him with an LEC.  The defendants moved to dismiss for lack of subject matter jurisdiction, lack of standing, and for failure to state a claim upon which relief could be granted.   The district court found that the decision to issue an LEC is discretionary and dismissed his claims for want of subject matter jurisdiction and standing.  We conclude, essentially for the reasons stated by the district court in its December 8, 2008 order, that an official's decision whether or not to issue an LEC is discretionary.

## DISCUSSION

The dispositive issue in this case is whether the decision to issue an LEC is discretionary or mandatory.  We hold that it is discretionary and that accordingly the district court properly dismissed Ordoñez's claims.

## I.  Standard of Review

We review a district court's decision to dismiss for lack of subject-matter jurisdiction de novo.  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 170 (5th Cir. 2009).  We also review a district court's decision to dismiss for lack of standing de novo.  *Little v. KPMG, LLP*, 575 F.3d 533, 540 (5th Cir. 2009).  District courts lack subject-matter jurisdiction over claims that are wholly insubstantial and frivolous or clearly immaterial and made solely for the purpose of obtaining jurisdiction.  *Steel Co. v. Citizens for a Better Environment*, 118 S.Ct. 1003, 1010 (1998).

3

A district court's certification of a class is reviewed under the abuse of discretion standard. *Shipes v. Trinity Industries*, 987 F.2d 311, 316 (5th Cir. 1993). The district court has wide discretion in deciding whether or not to certify a proposed class. *Id.*

## II. Issuing LECs

Ordoñez argues that law enforcement agencies must automatically issue LECs to aliens who satisfy the statutory prerequisites for receiving one. He contends that the language in 8 U.S.C. § 1184(p)(1),[1] which provides that

---

[1] 8 U.S.C. § 1184 provides, in relevant part:
"**§ 1184.  Admission of nonimmigrants**
   * * *
    **(p)  Requirements applicable to section 1101(a)(15)(U) visas**
      **(1)  Petitioning procedures for section 1101(a)(15)(U) visas**
        The petition filed by an alien under section 1101(a)(15)(U)(i) of this title shall contain a certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity described in section 1101(a)(15)(U)(iii) of this title.  This certification may also be provided by an official of the Service whose ability to provide such certification is not limited to information concerning immigration violations.  This certification shall state that the alien 'has been helpful, is being helpful, or is likely to be helpful' in the investigation or prosecution of criminal activity described in section 1101(a)(15)(U)(iii) of this title.
      **(2)  Numerical limitations**
        **(A)** The number of aliens who may be issued visas or otherwise provided status as nonimmigrants under section 1101(a)(15)(U) of this title in any fiscal year shall not exceed 10,000.
        **(B)** The numerical limitations in subparagraph (A) shall only apply to principal aliens described in section 1101(a)(15)(U)(i) of this title, and not to spouses, children, or, in the case of alien children, the alien parents of such children.
      **(3)  Duties of the Attorney General with respect to "U" visa nonimmigrants**
      With respect to nonimmigrant aliens described in subsection (a)(15)(U) of section 1101 of this title—
        **(A)** the Attorney General and other government officials, where appropriate, shall provide those aliens with referrals to nongovernmental organizations to advise the aliens regarding their options while in the United States and the resources

"[t]he petition filed by an alien under § 1101(a)(15)(U)(i)[2] . . . shall contain a

---

available to them; and

    **(B)** the Attorney General shall, during the period those aliens are in lawful temporary resident status under that subsection, provide the aliens with employment authorization.

**(4)  Credible evidence considered**

    In acting on any petition filed under this subsection, the consular officer or the Attorney General, as appropriate, shall consider any credible evidence relevant to the petition."

8 U.S.C.A. § 1184(p) (West 2005 & Supp. 2009) (emphasis in original).

[2] 8 U.S.C. § 1101 provides, in relevant part:

**"§ 1101.  Definitions**

  **(a)**  As used in this chapter—

    * * *

    **(15)**  The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

      * * *

    **(U)(i)** subject to section 1184(p) of this title, an alien who files a petition for status under this paragraph, if the Secretary of Homeland Security determines that—

        **(I)** the alien has suffered substantial physical or mental abuse as a result of having been a victim of criminal activity described in clause (iii);

        **(II)** the alien . . . possesses information concerning criminal activity described in clause (iii);

        **(III)** the alien . . . has been helpful, is being helpful, or is likely to be helpful to a Federal, State, or local law enforcement official . . . or local authorities investigating or prosecuting criminal activity described in clause (iii); and

        **(IV)** the criminal activity described in clause (iii) violated the laws of the United States or occurred in the United States (including in Indian country and military installations) or the territories and possessions of the United States;

      * * *

    **(iii)** the criminal activity referred to in this clause is that involving one or more of the following or any similar activity in violation of Federal, State, or local criminal law:

        rape; torture; trafficking; incest; domestic

5

certification from a Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority," is a mandate to law enforcement officials to issue LECs, rather than merely an instruction to aliens who intend to apply for U-Visas. In support of this interpretation, he notes that subsections (p)(3) and (p)(4) of § 1184 contain mandates directed at the Attorney General. He also argues that, because aliens have a right to petition for a U-Visa,[3] and because an LEC is a necessary part of a U-Visa application, it follows that law enforcement officials cannot deny an alien's right to apply for a U-Visa by refusing to issue him an LEC.

We disagree. We think the language of § 1184(p) makes it abundantly clear that the decision to issue a law enforcement certification is a discretionary one. In the first place, the portion of the statute which contains Ordoñez's purported mandate is entitled "**Petitioning procedures for section 1101(a)(15)(U) visas**." 8 U.S.C.A. § 1184(p)(1) (emphasis in original). This strongly implies that all language contained therein is directed toward the applicant of the visa. Furthermore, the content of the LEC itself requires an exercise of discretion every time one is issued. The LEC must state that the petitioner "'has been helpful, is being helpful, or is

---

violence; sexual assault; abusive sexual contact; prostitution; sexual exploitation; female genital mutilation; being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment; blackmail; extortion; manslaughter; murder; felonious assault; witness tampering; obstruction of justice; perjury; or attempt, conspiracy, or solicitation to commit any of the above mentioned crimes; . . ."
8 U.S.C.A. § 1101(a)(15)(U) (West 2005 & Supp. 2009) (emphasis in original).

[3] He never explains why we should accept this premise as correct.

likely to be helpful' in the investigation or prosecution of criminal activity." *Id.* Whether or not an alien has been "helpful" is not an objective determination that can be made ministerially. It is especially clear that this type of determination is discretionary where the prosecution or investigation in question has yet to be initiated or completed, as is envisioned in the statute's "likely to be helpful" language, since the decision to initiate (or to continue) an investigation or a prosecution is itself a classic example of a discretionary decision. Therefore, the district court correctly held that the decision to issue an LEC is discretionary.

Ordoñez's pleadings reveal that all of his claims were grounded on his argument that the decision to issue an LEC is mandatory. Because we find that this argument is totally meritless, we hold that the district court did not err in dismissing his suit.

A plaintiff cannot represent a class of whom he is not a part. *Bailey v. Patterson*, 82 S.Ct. 549, 550 (1962). Therefore, the district court also did not err by refusing to certify a class action.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.