# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2012

No. 10-40804

Lyle W. Cayce
Clerk

EDWARD DWAYNE ASHFORD,

Plaintiff–Appellant

v.

UNITED STATES OF AMERICA; RONALD THOMPSON, Regional Director;
JONATHAN DOBRE, Warden; R WHITE, Correctional Counselor,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:02-CV-598

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Edward Ashford brought suit against the United States
and several Bureau of Prisons officials, contending that they negligently ignored
his requests to be separated from fellow inmate Kelvin Smith, while the two
were incarcerated together at the United States Penitentiary in Beaumont,
Texas. Instead, officials placed Ashford in the general population upon his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-40804

arrival at the prison, where he was attacked and severely injured by two inmates operating upon Smith's instructions.

On appeal, we hold that Ashford's cause of action against the government under the Federal Tort Claims Act should be dismissed for lack of subject matter jurisdiction, as it is barred by the discretionary function exception to the government's waiver of sovereign immunity. Because we conclude that the lower court was without subject matter jurisdiction, we affirm the magistrate judge's dismissal of the action, but vacate the final order of dismissal and remand to the district court for the entry of a judgment of dismissal of all claims without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

As punishment for an August 2001 disciplinary infraction committed at a medium security federal correctional complex in Beaumont, Texas, Plaintiff-Appellant Edward Ashford ("Ashford") was transferred to the United States Penitentiary in Beaumont ("USP-Beaumont"), a high security institution. Ashford was concerned that this move would place him in the same facility as certain prisoners from the Washington, D.C. area. Although Ashford had been involved in incidents with several prisoners from that area (due to his prior cooperation with law enforcement and his father's service as a corrections officer in the Washington, D.C. jail), he was particularly concerned about an inmate named Kelvin Smith, who had attacked him in 1985 when the two had previously been incarcerated together. Ashford contends that Smith's attack had prompted corrections officers in Washington, D.C. to issue separation orders, forbidding the two inmates from being confined in the same prison population. Ashford's troubles with Smith followed him throughout the federal system, as Smith attempted to orchestrate attacks while Ashford was incarcerated at facilities in Terre Haute, Indiana and Leavenworth, Kansas.

2

No. 10-40804

Ashford contends that, prior to his transfer, he explained his concerns to the warden of the medium security facility in Beaumont, Jonathon Dobre. The warden advised him to contact several different Bureau of Prisons ("BOP") officials, including Ronald Thompson, Regional Director for the South Central Regional Office for the BOP. Ashford wrote these officials to explain that he should not be housed with prisoners from Washington, D.C., including Smith. Ashford claims that the warden assured him that his safety concerns would be investigated before his transfer.

Shortly thereafter, and before his concerns were investigated, Ashford was transferred to USP-Beaumont. When Ashford arrived at the prison, he was interviewed by Lieutenant Russell Haas. Ashford claims that he provided Haas with details of his history with Smith, and asked whether Smith was housed at the facility. According to Ashford, Haas assured him that Smith was not incarcerated at USP-Beaumont. This, however, was not the case, as Smith was in fact incarcerated there. Haas, however, claims that Ashford never mentioned Smith during the intake interview. Ashford also completed an Intake Screening Form upon his arrival, which asked, *inter alia*, "[d]o you know of any reason that you should not be placed in general population?" He responded, "No."

After the intake interview, Ashford was placed in the general population at USP-Beaumont. On November 16, 2001, just two days after his arrival, Ashford was told by certain inmates to "check in," meaning that he should enter protective custody due to an impending attack. Approximately six hours later, an inmate approached Ashford and purportedly said: "I ain't got no beef with you personally, right; but [Smith] sent us." Ashford was then viciously attacked and stabbed approximately 13 times. He sustained wounds to his back, head, inner left ear canal, and upper torso. His left lung was punctured. The attack has left Ashford with both hearing and vision problems.

No. 10-40804

Ashford subsequently brought suit against the United States and several prison officials under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] His FTCA claim alleged that the government negligently placed him in the general prison population with Smith and other prisoners from Washington, D.C. The parties consented to have a magistrate judge hear and decide the FTCA claim pursuant to 28 U.S.C. § 636(c), and the magistrate judge held a *Flowers* evidentiary hearing.[2] After the hearing, the magistrate judge declined to make credibility determinations, and instead granted the government's summary judgment motion based upon the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a).

Ashford appealed the magistrate judge's judgment, and a panel of this court reversed, holding that a genuine dispute of material fact existed as to whether Ashford raised his safety concerns to officials at USP-Beaumont, thereby triggering a prison policy that required officials to put Ashford in solitary confinement until an investigation could be conducted. *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007). The panel reasoned that this policy "constrained the prison officials' discretion such that if the factual predicate to the policy was met, there was no room for choice in making the decision whether to place Ashford in solitary confinement," and thus the discretionary function exception to the FTCA would not apply. *Id.* The panel then remanded the case to the magistrate judge to determine whether in fact this mandatory prison policy was triggered in light of the facts of the case.

---

[1] Ashford's *Bivens* claims against the individual defendants were dismissed, and Ashford does not appeal this decision. As such, only Ashford's FTCA claim against the government remains.

[2] *See Flowers v. Phelps*, 956 F.2d 488 (5th Cir.), *vacated and superceded in part on denial of reh'g*, 964 F.2d 400 (5th Cir. 1992).

No. 10-40804

Upon remand, the magistrate judge entered findings of fact and conclusions of law based upon the same *Flowers* hearing that was held prior to the grant of summary judgment. Instead of addressing the FTCA discretionary function exception, however, the magistrate judge proceeded to the merits and concluded that the government was not negligent. Ashford now appeals again.

## II. STANDARD OF REVIEW

A *Flowers* hearing "'amounts to a bench trial replete with credibility determinations and findings of fact.'" *Ashford*, 511 F.3d at 504 (quoting *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995)). As with any bench trial, "we review . . . findings of fact for clear error; conclusions of law, *de novo*." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *United States v. Cluck*, 143 F.3d 174, 180 (5th Cir. 1998). A factual finding is clearly erroneous where, "'although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III. DISCUSSION

The FTCA is a limited waiver of the United States' sovereign immunity from suit for claims regarding "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). We strictly construe such waivers, resolving all ambiguities in favor of the sovereign. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). The FTCA's discretionary function exception provides that sovereign immunity is not waived for any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception is potentially applicable in this case because BOP officials generally exercise significant judgment in fulfilling their statutory obligation to provide for the safekeeping, care, and subsistence of all federal prisoners. *See* 18 U.S.C. § 4042(a) (setting out duties of the BOP); *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) ("[T]he Federal Bureau of Prisons [must] provide for the safekeeping, care, and subsistence of all federal prisoners, but [Section 4042(a)] does not indicate the manner in which the duty must be fulfilled.").

We must engage in a two-step analysis to determine whether the FTCA discretionary function exception applies. *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). We first ask whether the act "involv[es] an element of judgment or choice." *Id.* at 322 (internal quotation marks and citation omitted). If so, we then ask "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (internal quotation marks and citation omitted). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the discretionary function exception applies, this court lacks subject matter jurisdiction. *See Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc).

As noted above, when this case was previously on appeal, the panel found that a genuine issue of fact existed regarding whether the discretionary function exception applied. *Ashford*, 511 F.3d at 505. Upon remand, however, the magistrate judge failed to address this issue and instead proceeded to the question of the government's negligence. Ashford now appeals on the basis that the magistrate judge's factual findings are clearly erroneous. The government

opposes the appeal on this basis. Neither party, however, addresses the immunity issue on appeal. Nevertheless, it is well settled that "every federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934)). The Supreme Court has disapproved of the practice of exercising "hypothetical jurisdiction," and has explained that federal courts must resolve questions of jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *see also USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 283 & n.6 (5th Cir. 2011); *Jasper v. FEMA*, 414 F. App'x 649, 651 (5th Cir. 2011) ("Because a federal court must determine whether jurisdiction is proper prior to addressing the merits of a case, a district court must first determine if [an FTCA exception applies]."). We must therefore address the applicability of the discretionary function exception to the FTCA, and cannot simply avoid this analysis in favor of a resolution on the merits.[3]

## A.    *Discretionary Function Exception - Step One*

The first *Ashford* panel determined that the government had failed to demonstrate that the initial step of the discretionary function analysis had been satisfied as a matter of law. It explained:

---

[3] Although the magistrate judge entered his factual findings based upon the same *Flowers* hearing that he held prior to granting summary judgment, a *Flowers* hearing "'amounts to a bench trial replete with credibility determinations and findings of fact.'" *Ashford*, 511 F.3d at 504 (quoting *McAfee v. Martin*, 63 F.3d 436, 437 (5th Cir. 1995)). The magistrate judge was thus not required to conduct a new hearing after the reversal of the summary judgment order. Ashford contends that the magistrate judge should have at least provided notice of his intent to rule based upon the *Flowers* hearing, and that such notice would have afforded him the opportunity to present other evidence. Although perhaps the magistrate judge could have afforded the parties notice before entry of the findings of fact and conclusions of law in this case, we cannot say that this was required. If Ashford believed that the magistrate judge's findings were incomplete in light of certain evidence, he could have sought relief under Federal Rules of Civil Procedure 59 and 60, but he did not do so.

No. 10-40804

> Two Government witnesses, Doty and Hass [sic], testified that if an inmate raised a safety concern like the one Ashford claims he raised at the intake interview, *prison policy required him to be put into solitary confinement until an investigation could be conducted.* That policy constrained the prison officials' discretion such that if the factual predicate to the policy was met, there was no room for choice in making the decision whether to place Ashford in solitary confinement. There is a dispute, however, about whether the factual predicate to the policy was met: Ashford claims he raised safety concerns, thereby triggering the policy. Government witnesses testified to the contrary. That fact dispute makes summary judgment on the discretionary-function exception improper.

*Ashford*, 511 F.3d at 505 (emphasis added). Although the panel did not refer to a formal BOP policy in its opinion, we understand that the policy at issue was described during the *Flowers* hearing. During cross-examination, Patricia Doty (the case management coordinator) had agreed with the government that, if Ashford had "identified a security threat from an inmate, he would have been placed in some sort of administrative segregation until that could be investigated." Haas likewise confirmed that if Ashford had indicated in his initial interview that Smith posed a security threat to him, Ashford would have been secured in protective custody while the allegations were investigated.

Although the magistrate judge did not specifically address the discretionary function exception, upon remand he did resolve the factual dispute raised by the *Ashford* panel. Based largely upon the testimony of Doty and Haas, the magistrate judge concluded that Ashford failed to raise his security concerns at the first intake screening upon arrival at USP-Beaumont, that he declined to note any security concerns on his BOP Intake Screening Form, and that he neglected to make his safety concerns known to Haas, who conducted a second screening interview after Ashford's arrival. Finally, Ashford conceded during the *Flowers* hearing that, after his arrival at USP-Beaumont and his placement in the general population, he did not report any security concerns to prison officials.

No. 10-40804

The magistrate judge's conclusion that Ashford never raised his security concerns to prison officials at USP-Beaumont is certainly plausible in light of the record as a whole, specifically the testimony of Doty and Haas, which the magistrate judge found credible. We find no clear error in this factual determination. *See Anderson*, 470 U.S. at 575 ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."). Without any safety concerns, prison officials were free to place Ashford in the general population.

While the magistrate judge did find that, before his transfer to USP-Beaumont, Ashford wrote a letter to regional director Ronald Thompson expressing his safety concerns, there is no indication in the record that the appropriate officials at USP-Beaumont received and considered this letter prior to the incident. In fact, the only responsive letter from a BOP official, the Correctional Services Administrator, is dated November 23, 2001, after Ashford's November 16, 2001 assault.

On appeal, Ashford argues that the magistrate judge's factual findings are clearly erroneous because the testimony of Doty and Haas is refuted by two separation orders in his central file, which Ashford now produces for the first time. One such order, bearing the letterhead of the District of Columbia Department of Corrections Detention Facility, and dated October 22, 1985, states that Ashford was attacked while in transit from court to the jail by members of the "8th & H Street, N.E. Crew," including Kelvin Smith. It states that "[t]hese residents are to be kept separated and apart from each other at all times until further notice and this includes all movement outside the facility." A second letter, dated October 23, 1985, repeats this separation order.

9

No. 10-40804

Ashford contends that these separation orders trigger the mandatory requirements of 28 C.F.R. § 524.72(f), and thus render the discretionary function exception inapplicable. Section 524.72 relates to Central Inmate Monitoring ("CIM"), and provides assignment categories for certain classifications of inmates. Subsection (f) relates to "separation" inmates, a term that refers to "[i]nmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future." *Id.* In making this classification decision, BOP officials may consider "testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution." *Id.* The classification "also includes those inmates who have provided authorities with information concerning the unauthorized or illegal activities of others," as well as "inmates from whom there is no identifiable threat, but who are to be separated from others at the request of the Federal Judiciary or U.S. Attorneys." *Id.* In *Parrott v. United States*, 536 F.3d 629 (7th Cir. 2008), the Seventh Circuit concluded that Section 524.72(f) requires BOP officials to "'prevent any physical contact' between specified separated individuals," and if the BOP "failed to enforce its own classification decision, [the plaintiff] would be able to escape the force of the" FTCA discretionary function exception. *Id.* at 638. The court recognized, however, that the "existence (or absence) of [a formal separation] order is of central importance." *Id.*

We need not consider whether Section 524.72(f) limits prison officials' discretion for purposes of the FTCA discretionary function exception, as the separation orders at issue here do not appear in the district court record, and were not presented during the *Flowers* hearing. Ashford does not explain how

No. 10-40804

or when he obtained these orders (other than to state that he obtained them through a Freedom of Information Act request).[4] He contends that the October 22, 1985 separation order is in the district court record, but concedes that the October 23, 1985 order is not. Our review of the record reveals neither separation order. It is well established that we "may not consider new evidence furnished for the first time on appeal and may not consider facts which were not before the district court at the time of the challenged ruling." *Theroit v. Parish of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999). We have applied this same rule in *pro se* actions brought by prisoners. *See Treece v. Andrews*, 188 F. App'x 230, 230-31 (5th Cir. 2006). We therefore cannot, and do not, consider the separation orders now appended to Ashford's brief on appeal.

On the record before us, we find no clear error in the lower court's findings of fact. Because Ashford failed to raise his security concerns during the intake process, and the prison's diligent search failed to reveal the purported separation orders, the prison had no mandatory obligation to separate Ashford from Smith. Instead, Ashford's classification and placement upon arrival were in the prison's discretion. We conclude that placement of Ashford in the general population at USP-Beaumont involved an element of "judgment or choice," *Gaubert*, 499 U.S. at 322, and thus satisfies the first step of the discretionary function analysis.

---

[4] We note that these two separation orders were addressed in another lawsuit that Ashford filed against the District of Columbia, *Ashford v. District of Columbia*, No. 02-1955 (D.D.C.), which sought to hold D.C. officials liable for failing to relay the separation orders to officials at USP-Beaumont. In that case, D.C. corrections officials stated that Ashford's file contained no separation orders with respect to Smith, and contended that the separation orders Ashford produced had been fabricated. *Ashford v. District of Columbia*, No. 02-1955, 2006 WL 2711530, at *2 (D.D.C. Sept. 21, 2006). The district court ultimately did not resolve this issue, finding instead that the "authenticity of these memoranda does not affect the legal analysis," since it found no evidence of deliberate indifference by the municipality to support a claim under 42 U.S.C. § 1983. *Id.* at *3.

No. 10-40804

### B.    *Discretionary Function Exception - Step Two*

The second step in our discretionary function analysis requires us to ask whether the judgment at issue "is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (internal quotation marks and citation omitted). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323 (internal quotation marks and citations omitted).

Maintaining order and security in prison is the type of policy-based decision that the discretionary function exception shields. In *Patel v. United States*, 398 F. App'x 22 (5th Cir. 2010), we addressed whether the discretionary function exception applied in a suit brought by an inmate with certain medical conditions who challenged the government's decisions to transfer him to numerous facilities without providing proper medical care. *Id.* at 25. Finding that the discretionary function exception applied, we reasoned that "decisions regarding the transfers and classifications of prisoners generally fall within the discretionary function exception," and that the transfers at issue were the kind of decision that the "'discretionary function exception was designed to shield.'" *Id.* at 29 (quoting *Gaubert*, 499 U.S. at 322-23). Other circuits have agreed. *See Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998) ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons."); *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are

12

No. 10-40804

inherently grounded in social, political, and economic policy. We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protective action."); *Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997) ("It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy."). We see no reason to depart from these well-reasoned decisions. The classification decision at issue here "is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23.

Thus, in light of the magistrate judge's factfinding based upon the *Flowers* hearing, we conclude that the discretionary function exception to the FTCA is applicable, and the court therefore lacks subject matter jurisdiction over this action. *See Castro*, 608 F.3d at 268. Although the lower court erred by failing to resolve this jurisdictional issue before proceeding to the merits, we ultimately affirm its dismissal of this case on the jurisdictional basis discussed herein. We therefore do not consider the merits of Ashford's negligence claim.

Because we conclude that the magistrate judge should have dismissed Ashford's claim under the FTCA for lack of subject matter jurisdiction, the dismissal should have been without prejudice. *See Davis v. United States*, 961 F.2d 53, 56-58 (5th Cir. 1991) (holding that FTCA claim was properly dismissed for lack of subject matter jurisdiction, but that district court was "incorrect to dismiss [the] case with prejudice," and therefore remanding for entry of order of dismissal without prejudice); *see also Hix v. U.S. Army Corps of Eng'rs*, 155 F. App'x 121, 128 (5th Cir. 2005) ("[B]ecause it lacked subject-matter jurisdiction over Appellants' [FTCA] claims, the district court erred in dismissing the claims with prejudice, which also operates as a judgment on the merits."). As such, we affirm the magistrate judge's dismissal of the action, but vacate the final order

No. 10-40804

of dismissal and remand to the district court for the entry of a judgment of dismissal of Ashford's FTCA claim without prejudice.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the magistrate judge's dismissal of the action, but VACATE the final order of dismissal with prejudice and REMAND to the district court with instructions to enter a judgment of dismissal of all claims without prejudice.