# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 19-40077

————

United States Court of Appeals
Fifth Circuit

**FILED**
April 6, 2020

Lyle W. Cayce
Clerk

CASCABEL CATTLE COMPANY, L.L.C.,

       Plaintiff - Appellant

v.

UNITED STATES OF AMERICA; SONNY PERDUE, Secretary of Agriculture (or his successor); KEVIN SHEA, Administrator of the Animal and Plant Health Inspection Service of the USDA (or his successor),

       Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with 19-40086

JUAN DELGADILLO,

       Plaintiff - Appellant

v.

UNITED STATES OF AMERICA; SONNY PERDUE, Secretary of Agriculture (or his successor); KEVIN SHEA, Administrator of the Animal and Plant Health Inspection Service of the USDA (or his successor),

       Defendants - Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Consolidated with 19-40134

LUIS RAMIREZ; SANTIAGO MARTINEZ,

       Plaintiffs - Appellants

No. 19-40077

c/w 19-40086, 19-40134

v.

UNITED STATES OF AMERICA; SONNY PERDUE, Secretary of
Agriculture (or his
successor); KEVIN SHEA, Administrator of the Animal and Plant Health
Inspection Service of the USDA (or his successor),

Defendants - Appellees

_____

Appeals from the United States District Court for the
Southern District of Texas

_____

Before WIENER, HIGGINSON, and HO, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiffs-Appellants—Cascabel Cattle Company, Juan Delgadillo, Luis Ramirez, and Santiago Ramirez ("plaintiffs")—sued the United States, the Secretary of Agriculture, and the Administrator of the United States Department of Agriculture's Animal and Plant Health Inspection Service ("defendants"), alleging violations of the Federal Tort Claims Act ("FTCA"). Plaintiffs seek monetary damages associated with their loss of livestock following the implementation of a temporary fever tick quarantine. We AFFIRM the district court's dismissal for lack of jurisdiction because the defendants' challenged actions fall under the quarantine exception to the FTCA.

I

Plaintiffs own cattle that they raise for sale in Cameron County, Texas. In 2014, the Texas Animal Health Commission ("TAHC") declared a temporary fever tick quarantine that included the land where the plaintiffs' cattle were being raised. As a result, restrictions were placed on the movement and sale of

2

No. 19-40077

c/w 19-40086, 19-40134

the plaintiffs' cattle, and the plaintiffs were required to submit their livestock for inspection and treatment. The quarantine was part of the Fever Tick Eradication Program—a joint effort between the United States Department of Agriculture ("USDA") and TAHC—to eradicate fever ticks. Fever ticks are destructive to livestock because they carry protozoan parasites that cause the often-fatal cattle disease babesiosis.

The Fever Tick Eradication Program is governed by both federal and state regulations. *See* 9 C.F.R. §§ 72.1–72.25; 4 TEX. ADMIN. CODE §§ 41.1–41.22. Among other things, these regulations classify all cattle in a quarantine zone as infected, restrict the movement of infected cattle beyond the quarantine area, and list the specific pesticides and methods of application to be used for treatment. 9 C.F.R. §§ 72.1, 72.11, 72.13, 72.25; 4 TEX. ADMIN. CODE §§ 41.4–41.6, 41.8. The restricted-use pesticide cuomaphos, or Co-Ral, is approved for government use in quarantine zones as a "25 percent wettable powder or flowable form labeled for use as a 0.25 percent dip and used at a concentration of 0.125 to 0.250." 9 C.F.R. § 72.13(b). The government is required to administer Co-Ral by "thoroughly wetting the entire skin by either immersion in a chemical solution in a dip vat, or by spraying with a chemical solution using a spray-dip machine or a hand-held sprayer." *Id.* § 72.25.

Co-Ral's label also contains instructions regarding its use. Relevantly, the label warns "not [to] spray in a confined, non-ventilated area" and provides instructions on how to properly mix Co-Ral for both spray and dip treatment. The label also states, "It is a violation of Federal Law to use this product in a manner inconsistent with its labeling." *See* 7 U.S.C. § 136j(a)(2)(G) ("It shall be unlawful for any person to use any registered pesticide in a manner inconsistent with its labeling . . . .").

Plaintiffs claim that their cattle suffered injury and death as a result of the defendants' actions during the quarantine. They claim that government

3

No. 19-40077

c/w 19-40086, 19-40134

personnel negligently rounded up cattle for treatment using chutes and roping, resulting in the death of at least 14 cattle. They also allege that the government's application of Co-Ral by spray box and dipping vat violated the Co-Ral label and led to the injury and death of more cattle.

The district court dismissed the lawsuit, finding no jurisdiction because plaintiffs' claims were barred by the quarantine exception to the FTCA. The district court also found that Cascabel Cattle Company failed to exhaust its administrative remedies for its claims related to the use of a spray box, as required by the FTCA. Because we AFFIRM dismissal based on the quarantine exception, we need not address the exhaustion issue.

II

We review de novo the district court's dismissal for lack of subject-matter jurisdiction. *See Ordonez Orosco v. Napolitano*, 598 F.3d 222, 225 (5th Cir. 2010).

"The United States enjoys sovereign immunity from suit, meaning it cannot be sued without consent." *Gonzalez v. United States*, 851 F.3d 538, 543 (5th Cir. 2017). "[T]he existence of consent is a prerequisite for jurisdiction." *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003). The FTCA provides a waiver of sovereign immunity and is "the sole basis of recovery for tort claims against the United States." *Gonzalez*, 851 F.3d at 543. However, the FTCA's waiver of sovereign immunity is subject to thirteen statutory exceptions. *See* 28 U.S.C. § 2680. If one of these exceptions applies, a federal court is without subject-matter jurisdiction over the claim. *Campos v. United States*, 888 F.3d 724, 730 (5th Cir. 2018).

A waiver of the Government's sovereign immunity is typically construed, "in terms of its scope, in favor of the sovereign." *See Lane v. Pena*, 518 U.S. 187, 192 (1996). However, the Supreme Court has clarified that this "general rule" is "unhelpful" in the context of the FTCA. *Dolan v. U.S. Postal Serv.*, 546 U.S.

No. 19-40077

c/w 19-40086, 19-40134

481, 491–92 (2006) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)).[1] "[T]he proper objective of a court attempting to construe one of the subsections of 28 U.S.C. § 2680 is to identify those circumstances which are within the words and reason of the exception—no less and no more." *Id.* (quoting *Kosak*, 465 U.S. at 853 n.9).

## III

The quarantine exception to the FTCA states that the statute's sovereign immunity waiver does not apply to "[a]ny claim for damages caused by the imposition or establishment of a quarantine by the United States." 28 U.S.C. § 2680(f). The parties dispute the meaning of the terms "caused by" and "imposition or establishment."[2]

"[W]ords in statutes are [typically] construed according to 'their ordinary, contemporary, common meaning[s].'" *Kennedy v. Tex. Utilities*, 179 F.3d 258, 261 (5th Cir. 1999) (alteration in original) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)). We often look to dictionary definitions for help in discerning a word's ordinary meaning. *See, e.g., United States v. Am. Commercial Lines, L.L.C.*, 875 F.3d 170, 175 (5th Cir. 2017); *see also Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) ("[W]e routinely consult dictionaries as a principal source of ordinary meaning.").

---

[1] To the extent our unpublished caselaw has suggested otherwise, it is not persuasive because it does not engage with the Supreme Court's clarification in *Dolan. See, e.g., Huff v. Neal*, 555 F. App'x 289, 297 (5th Cir. 2014); *Ashford v. United States*, 463 F. App'x 387, 391 (5th Cir. 2012); *Jasper v. Fed. Emergency Mgmt. Agency*, 414 F. App'x 649, 651 (5th Cir. 2011); *Patel v. United States*, 398 F. App'x 22, 27 (5th Cir. 2010); *Linn v. United States*, 281 F. App'x 339, 344 (5th Cir. 2008).

[2] On appeal, the plaintiffs do not argue that Co-Ral treatments are not part of fever tick "quarantines." When plaintiffs' counsel was asked at oral argument whether the quarantine encompasses the treatment, he responded affirmatively. Therefore, we do not decide this undisputed issue.

No. 19-40077

c/w 19-40086, 19-40134

At the time of the FTCA's enactment, "establishment" was defined as "[t]he action of establishing; the fact of being established." *Establishment*, OXFORD ENGLISH DICTIONARY (1933). It also had an alternative definition of "'establishing' by law." *Id.* The root, "establish," was further defined as "[t]o fix settle, institute or ordain permanently, by enactment or agreement." *Establish*, OXFORD ENGLISH DICTIONARY (1933). "Imposition" was defined as "[t]he action of imposing or laying as a burden, duty, charge, or task; the action of inflicting, levying, enjoining, or enforcing." *Imposition*, OXFORD ENGLISH DICTIONARY (1933). "The definition[s] of words in isolation however, [are] not necessarily controlling in statutory construction. . . . Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan*, 546 U.S. at 486.

Beginning with context, "different words within the same statute should, if possible, be given different meanings." *BNSF Ry. Co. v. United States*, 775 F.3d 743, 755 n.86 (5th Cir. 2015) (citation omitted). Other cannons of statutory interpretation suggest the same. For example, the Supreme Court has noted that "or" is "almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018). Here, a disjunctive interpretation of "or" would imply that "establishment" and "imposition" connote different actions. *See* 28 U.S.C. § 2680(f). Additionally, statutes should ordinarily be construed so that no words constitute surplusage. *See Corley v. United States*, 556 U.S. 303, 314 (2009). By applying independent significance to "establishment" and "imposition," we help ensure that no part of the statute is "inoperative" or "insignificant." *See id.* (citation omitted). Therefore, we agree with the district court that "establishment" of the quarantine refers to enactment of the quarantine, and "imposition" of the quarantine refers to the manner in which the quarantine is carried out and enforced.

No. 19-40077

c/w 19-40086, 19-40134

Looking next to precedent, we have previously stated that the words "caused by" in the quarantine exception mean "proximately caused by." *Rey v. United States*, 484 F.2d 45, 48 (5th Cir. 1973). We have also said that the crux of proximate cause is reasonable foreseeability. *Johnson v. Greer*, 477 F.2d 101, 108 (5th Cir. 1973). Thus, the quarantine exception applies when a plaintiff's damages are reasonably foreseeable based on the government's decision to establish a quarantine or the government's actions imposing the quarantine.

This interpretation is consistent with our discussion in *Rey*. There, the plaintiffs filed an FTCA claim alleging that a USDA veterinarian negligently diagnosed their hogs with fatal hog cholera, leading them to be injected with a live virus vaccine that killed 415 hogs. *Rey*, 484 F.2d at 46–47. The complaint alleged that the veterinarian ordered the hogs quarantined "at the time the initial testing was done," and that the fatal vaccinations were performed because of the quarantine." *Id.* at 47. The district court dismissed the plaintiffs' claims pursuant to the quarantine exception. *Id.* We affirmed on the alternative grounds that the plaintiffs' claims were barred by either 28 U.S.C. § 2680(h), the misrepresentation exception, or by 28 U.S.C. § 2680(f), the quarantine exception. *Id.* at 50. In doing so, we provided some insight into the proper interpretation of the quarantine exception. *Id.* at 48. We explained that, "loss[es] in value occasioned by physical restraint on [live]stock for a period of time [and] losses caused by the forced exposure of healthy animals to diseased animals within the quarantine area" fall within the exception. *Id.* Claims of "negligence in the procedures . . . by which [the government] arrive[s] at a decision to impose a quarantine would also be barred by Section 2680(f)." *Id.* Conversely, we explained that damages which are merely incidental to a quarantine, such as "damages caused by the negligent operation of a motor vehicle during the quarantine inspection process, would not in our judgment be barred by Section 2680(f)." *Id.*

No. 19-40077

c/w 19-40086, 19-40134

This interpretation also makes sense in light of the purpose of the quarantine exception. "The § 2680 exceptions are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). The very nature of quarantines is that they may increase the risk to some in order to protect many. By retaining its sovereign immunity, the government has permitted itself to exercise its discretion in this sensitive area free from fear of litigation.

Plaintiffs complain that government employees negligently rounded up their cattle and negligently treated them with Co-Ral. But the only reason the government rounded up plaintiffs' cattle and treated them with Co-Ral was to enforce the temporary fever tick quarantine. Thus, as the district court noted, the plaintiffs' damages are not "an unfortunate incidental harm that was only tangentially related to the quarantine." Rather, plaintiffs' damages were "caused by" the "implementation" of the quarantine. Therefore, defendants' challenged actions fall within the quarantine exception to the FTCA.

Plaintiffs argue that this interpretation is unduly broad. They construe our interpretation as permitting "all government negligence touching a quarantine [to] be immune from suit." We disagree. As we explained in *Rey*, the "caused by" element of the exception is an important limiting factor. Government actions, like negligent driving, that are merely incidental to the establishment and imposition of a quarantine do not fall within the quarantine exception. Our interpretation properly identifies those circumstances that are within the words and reason of the exception—no less and no more. *See Dolan*, 546 U.S. at 491–92.

Plaintiffs also argue that our interpretation of the quarantine exception conflicts with 7 U.S.C. § 136j(a)(2)(G), which makes it unlawful "to use any registered pesticide in a manner inconsistent with its labeling." This argument misconstrues the nature of sovereign immunity. We hold only that a violation

No. 19-40077

c/w 19-40086, 19-40134

of 7 U.S.C. § 136j(a)(2)(G) does not provide a basis for recovery under the FTCA for plaintiffs whose damages were "caused by the imposition or establishment of a quarantine by the United States." *See* 28 U.S.C. § 2680(f).

Finally, plaintiffs argue that we should consider whether the government acted unreasonably and violated the instruction on the Co-Ral label. These arguments go to the merits of the lawsuit. Because we lack jurisdiction, we do not consider the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

## IV

For the forgoing reasons, we AFFIRM the district court's dismissal for lack of jurisdiction.