REVISED November 10, 2016

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20609

United States Court of Appeals
Fifth Circuit

**FILED**

November 7, 2016

Lyle W. Cayce
Clerk

AMARSAIKHAN TSOLMON,

      Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before KING, SMITH, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

The Federal Tort Claims Act (FTCA) waives sovereign immunity for many torts committed by federal employees. The statute's "discretionary function" exception preserves the federal government's immunity, however, when an employee's acts involve the exercise of judgment or choice. *United States v. Gaubert*, 499 U.S. 315, 322 (1991). We must decide whether an investigation into someone's immigration status is considered discretionary when that investigation culminates in a detainment mandated by agency policy.

## I.

Late one Friday evening, Amarsaikhan Tsolmon was riding on a Greyhound bus to visit his mother in northern Louisiana. The bus was stopped in Lake Charles, Louisiana by Customs and Border Protection (CBP) agents Robert Wilson and Michael Lewandowski, who boarded the bus to perform a routine check of the passengers' immigration status.[1]

When Wilson reached Tsolmon's seat, Tsolmon stated that he was a "Temporary Visitor." This was correct, as Tsolmon is a Mongolian citizen lawfully in the United States on an H-1B temporary worker visa. But Tsolmon did not have a physical copy of his immigration papers, despite a law requiring registered aliens eighteen or over to carry identifying documents. 8 U.S.C. § 1304(e). Instead, he could only produce a Texas identification card.

After being unable to verify Tsolmon's status through CBP's New Orleans dispatch, Wilson escorted him off the bus to continue the investigation. While Wilson contacted CBP to run additional searches, Tsolmon called his roommate in Houston to try to get more identifying information on his immigration status. The roommate provided Wilson information over the phone and emailed Tsolmon a photo of his I-94 form and Mongolian passport. But for reasons disputed by the parties Wilson was still unable to verify Tsolmon's status. The records check from other CBP offices incorrectly indicated that Tsolmon was an F-2 visa overstay, with no mention of his H-1B temporary worker visa.

With no information validating Tsolmon's legal status, Wilson arrested Tsolmon, took him to the Lake Charles CBP station, and conducted further

---

[1] Given that this case was dismissed at the pleading stage, the recitation of facts is based on Tsolmon's allegations, which must be taken as true at this stage. The recitation is also supplemented with undisputed facts from the government's motion to dismiss.

computer searches to find a record of Tsolmon's visa. Wilson also contacted his Supervisory Patrol Agent Daniel Stanley, who recommended continuing the computer searches and contacting Tsolmon's relatives to see if anyone had identifying numbers or documents on Tsolmon's status. Tsolmon and Wilson spoke on the phone with Tsolmon's mother, but Wilson was still unable to locate records verifying Tsolmon's claimed status. After several hours of searching, Wilson decided to process Tsolmon as a nonimmigrant overstay and issued him a Notice to Appear on the charge that Tsolmon was in violation of his F-2 visa—the only documentation Wilson uncovered through his record search at the time.

Tsolmon was taken to the Southwest Louisiana Correctional Center early Saturday morning, pursuant to CBP policy requiring the detainment of anyone who is issued a Notice to Appear. Tsolmon asserts that at the Correctional Center he was subjected to a medical exam and tuberculosis test, confined in an overcrowded cell without access to clean drinking water, not given access to a phone, and not given paperwork documenting his detainment.

On Sunday, Stanley arrived at the CBP station and conducted a more extensive search for all persons with the last name Tsolmon in a database that Wilson had previously searched. After a few hours, Stanley at last found a record verifying that Tsolmon held a valid H-1B visa. Later that evening, Tsolmon was taken to the Lake Charles CBP station to be released. Soon after, his brother arrived from Houston and drove him home.

Tsolmon filed an administrative claim with CBP alleging that the incident violated his Fourth Amendment rights and constituted false arrest, false imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress. After CBP denied his claim, Tsolmon filed the present suit. He originally asserted FTCA claims against the government and *Bivens* claims against the individuals involved in his detention.

3

His amended complaint asserts only two causes of action against the United States under the FTCA. The first alleges false arrest and false imprisonment under Louisiana tort law based on his "forty-eight hour arrest, detention and imprisonment . . . [that] was unlawful because it was done without a warrant and without probable cause" in violation of the Fourth Amendment and 8 U.S.C. § 1347(b). The second alleges negligence under Louisiana law, based on allegations that both Wilson and Stanley were "negligent in not verifying Plaintiff's immigration status for almost two days despite having the necessary information to do so." The government moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction.

The district court granted the government's motion, concluding that (1) the alleged conduct falls within the discretionary function exception to the FTCA's waiver of sovereign immunity, 28 U.S.C. § 2680(a), and (2) that the law enforcement proviso, 28 U.S.C. § 2680(h), does not apply.[2] Tsolmon appeals only the district court's decision that the discretionary function exception applies.

## II.

We review *de novo* a dismissal for lack of subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In deciding such a motion, courts can consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The district court considered the well-pleaded fact from the amended complaint, undisputed facts in the record, and disputed facts viewed in the light most favorable to Tsolmon; it did not resolve disputed facts.

---

[2] The law enforcement proviso extends the FTCA's waiver of sovereign immunity to claims against law enforcement officers "arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C. § 2680(h).

## III.

The FTCA is a limited waiver of sovereign immunity that allows plaintiffs to bring state law tort actions against the federal government. 28 U.S.C. § 2674. Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction. *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013); *see also* 28 U.S.C. § 1346(b)(1). Waiver of sovereign immunity is strictly construed, meaning uncertainty is decided in favor of the government. *Willoughby*, 730 F.3d at 480.

The discretionary function exception is one of several limitations on the FTCA's waiver. The exception preserves the government's sovereign immunity when the plaintiff's claim is based on an act by a government employee that falls within that employee's discretionary authority. 28 U.S.C. § 2680(a). Whether an official's actions fall within the exception involves two inquiries: (1) "the conduct must be a 'matter of choice for the acting employee,'" *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)); and (2) "the judgment [must be] of the kind that the discretionary function exception was designed to shield,'" *id.* at 568 (quoting *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991)). The plaintiff has the burden of establishing that the discretionary function exception does not apply. *Spotts*, 613 F.3d at 569.

Tsolmon appeals only the district court's determination that the challenged conduct involved judgment or choice. He invokes case law recognizing that if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," then the government employee does not truly have a choice (or at least a choice that the law will recognize as falling within the discretionary function exception). *Berkovitz*,

5

486 U.S. at 536. One example a court has recognized is when a government agent lies or mischaracterizes evidence in a criminal complaint, as the Federal Rules of Criminal Procedure require allegations in a criminal complaint to be sworn as true. *Camacho v. Cannella*, 2012 WL 3719749, at *10 (W.D. Tex. Aug. 27, 2012) (citing FED. R. CRIM. P. 3). Tsolmon argues that his case also involves a mandate that eliminated the officer's discretion, citing the CBP policy requiring officers to detain all aliens issued a Notice to Appear. Although the allegedly negligent actions of the officers led to the issuance of the Notice to Appear, Tsolmon argues that the decision to detain him after that Notice was issued was nondiscretionary because CBP policy required it.

But the district court determined that the conduct at issue is "the conclusions the CBP agents drew from their investigation of Tsolmon's immigration status and the basis and timing of Agent Wilson's decision to issue [a Notice to Appear] charging Tsolmon with being an alien illegally present in the United States, which [ ] resulted in Tsolmon's arrest and [ ] incarceration." The court based that conclusion largely on the amended complaint, which focuses on the steps the officers took to try to verify Tsolmon's immigration status.

The district court's framing of the relevant conduct is more consistent with Tsolmon's allegations. The amended complaint speaks at length about Wilson's investigation into Tsolmon's immigration status, but never mentions the CBP policy he now asserts is at issue. Nor did Tsolmon raise the CBP policy in his administrative complaint. *See* 28 U.S.C. § 2675 (requiring administrative exhaustion for FTCA claims). Tsolmon's false arrest claim also demonstrates the difficulty of his attempt to separate the policy from the investigative steps. The policy standing alone did not mandate Tsolmon's detention; the preliminary determination to issue a Notice to Appear was a crucial step in the chain of events. We thus evaluate the application of the

discretionary function exception with respect to the conduct challenged in Tsolmon's amended complaint, not in the context of a challenge to the CBP policy on which he now focuses.[3]

Having identified the relevant allegations as Wilson's investigation into Tsolmon's immigration status and decision to issue the Notice to Appear, the remaining analysis is straightforward. "[D]ecisions on when, where, and how to investigate and whether to prosecute" have long been found to be core examples of discretionary conduct for which the United States maintains its immunity. *Sutton v. United States*, 819 F.2d 1289, 1294–95 (5th Cir. 1987). We have applied that not just to officials enforcing the criminal laws, but also to officials enforcing the immigration laws. *Nguyen v. United States*, 2003 WL 1922969, at *1–2 (5th Cir. Mar. 31, 2003). The investigation into Tsolmon's status demonstrates the numerous choices involved in conducting such an inquiry. Wilson had to decide: whether to further investigate Tsolmon after discovering he did not have his immigration papers; which searches to run in the CBP database; with whom to communicate to try to verify Tsolmon's status; and whether to ultimately issue a Notice to Appear when he was unable to verify Tsolmon's status.

Tsolmon relies on a statute to avoid a holding that the agents' conduct falls within the discretionary function exception. This time making an argument that is contained in his pleadings, he contends that the officers

---

[3] We thus do not decide whether detainment under the policy itself is an act of discretion. To frame that question, however, is to identify the unusual posture of this argument. Indeed, Tsolmon's argument is different from what is typically seen when an FTCA plaintiff invokes a regulation or statute in trying to avoid the discretionary function exception. Those cases involve the allegation that a government employee is *violating* the statute, not that she is *following* it. The difference seems to matter at least at the liability stage. Acting in contravention of a statute not only takes conduct outside the permissible scope of discretion, it also often establishes negligence per se. In contrast, acting pursuant to a statute is not likely to be negligent.

exceeded their authority under 8 U.S.C. § 1357(a)(2) when they detained him. That statute provides that to make an arrest without a warrant, an officer must: (1) have "reason to believe" that a person is in the United States in violation of immigration law or regulation and (2) think that the person "is likely to escape before a warrant can be obtained for his arrest." *Id.* Tsolmon argues that Wilson did not have reason to believe that he was in violation of immigration law or likely to escape before a warrant could be issued.

Tsolmon is correct that the discretionary function exception does not protect officers who break the law or exceed their authority. *Sutton*, 819 F.2d at 1293. As the district court correctly noted, however, the exception fails to protect officers only when the statute governing the action "giv[es] *specific* direction as to any of these functions in a way that would make [the acts] non-discretionary." *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005). In other words, officers are unprotected only when they use their discretion to act in violation of a statute or policy that specifically directs them to act otherwise. *See, e.g., Collins v. United States*, 783 F.2d 1225, 1230–31 (5th Cir. 1986) (noting that a regulation at issue provided "no room for policy judgment or decision" once certain conditions were met). Section 1357(a)(2), with its judgment-laden "reasonable belief" standard, is not such a statute.[4]

\* \* \*

The judgment of the district court is AFFIRMED.

---

[4] Tsolmon's allegations also do not establish that the agents violated section 1357(a)(2). Wilson was unable to confirm Tsolmon's legal status after multiple attempts to verify it. Tsolmon was arrested at a bus station while travelling between states, which could plausibly give rise to the fear that Tsolmon would not remain in the jurisdiction before a warrant could be obtained.