# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60062

United States Court of Appeals
Fifth Circuit

**FILED**
March 22, 2017

Lyle W. Cayce
Clerk

TERESA GONZALEZ,

　　　　Plaintiff - Appellant

v.

UNITED STATES OF AMERICA; JOHN DOES A-Z,

　　　　Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Teresa Gonzalez was injured while riding her bicycle over a ramp at De Soto National Forest. She sued various United States officials under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, alleging they failed to inspect and maintain the bicycle trails, and failed to warn her of the hazard. The United States moved to dismiss, arguing that the FTCA's "discretionary function exception" barred Gonzalez's claims. The district court granted the motion. We AFFIRM.

No. 16-60062

## I.

On July 28, 2012, Teresa Gonzalez and Robert Reville, Jr., went to the De Soto National Forest to ride their bicycles at the Bethel Bicycle Trails, which included the Couch Loop Trail. Before they began riding, Gonzalez did not look at the bulletin board at the park's entrance, which contained a sign stating that the Couch Loop Trail was closed. They nevertheless embarked on the Couch Loop Trail. At some point, they took an "alternate route" to the left of the main trail that led to obstacles including a teeter-totter and a ramp. Neither attempted to ride over the teeter-totter, but both decided to ride over the ramp. Gonzalez had never jumped off a ramp before, and when she tried to do so, she fell off and suffered serious injuries.

Gonzalez assumed that the ramp was part of the trail and built by the Forest Service. In fact, the ramp was built illegally by Gulf Coast Bicycle Club members, without the knowledge of the United States Forest Service ("USFS"). The USFS employees were not aware of the ramp's existence before Gonzalez's accident. They were, however, aware of an unauthorized bridge further down the trail, which is why the Couch Loop Trail was closed on the day of Gonzalez's accident.[1]

USFS recreational technician Charles Grice had posted a sign at the trailhead bulletin board that stated the trail was closed, and also flagged the bridge area with boards, signs, and ribbons. The sign at the trailhead bulletin board stated: "Couch Trail CLOSED," and in smaller type, "Bridge Out." The sign was on an 8 ½" by 11" sheet of paper. Gonzalez claims that neither she nor Reville saw any signs, and that she would have obeyed any warning sign she saw.

---

[1] Gonzalez was injured on the ramp before making it to the bridge area.

No. 16-60062

De Soto National Forest is about 382,000 acres. In 2012, Ronald Smith was the De Soto National Forest District Ranger, the highest ranking officer of a district. Two technicians were responsible for maintaining and inspecting the Bethel Bicycle Trails, full-time technician Charles Grice, and part-time technician, Anthony Bond. Grice testified that inspection and maintenance of the trails included identifying hazards, such as trees, and performing repair work. He spot-checked the trail and checked it when people called. If Grice found an unauthorized structure, he reported it to the ranger. He stated that he and Bond "bush hog the trail pretty much every year," which includes clearing and cleaning the trail. Grice did not know whether he had bush hogged the teeter-totter and ramp area in 2012. The last time Grice remembered inspecting the Couch Loop Trail before Gonzalez's accident was when he was inspecting a trail contractor's work, however he could not remember when that was. Other than checking for unsafe structures or trees and bush hogging, there are no other scheduled inspections of the trail. Since January 2012, Grice was also responsible for posting any warning signs at the trailhead. Grice stated that no one instructed him about the placement of trail closure notices, and that "[w]e just put them on the bulletin board at the trailhead areas." Grice and Bond were not allowed to post warning signs or close a trail without Ranger Smith's authority.

A number of laws, regulations and policies affect the USFS, including the following that Gonzalez highlights in this appeal: (1) The Forest Service Manual – FSM-2300 Recreational, Wilderness, and Related Resource Management ("the Manual"); (2) The Forest Service Handbook – FSH 2309.18 – Trails Management Handbook ("the Handbook"); and (3) the Forest Service-EM7100-15 Sign and Poster Guidelines for the Forest Service ("Sign and Poster Guidelines").

3

No. 16-60062

Gonzalez filed a complaint against the United States on February 21, 2014, asserting jurisdiction under 28 U.S.C. § 1346(B)(1). She advanced several negligence theories, essentially alleging that the United States failed to keep its premises safe, failed to perform inspections, and failed to warn of a dangerous condition. The United States moved to dismiss for lack of subject matter jurisdiction, arguing that the discretionary function exception to the FTCA's waiver of sovereign immunity applied. It alternatively moved for summary judgment "because no USFS employee engaged in any negligent act or omission for which the United States may be held liable to the Plaintiff under the FTCA." The district court granted the motion to dismiss based on the FTCA discretionary functions exception, not reaching the government's alternative argument. Gonzalez appealed.

## II.

"We review the district court's dismissal for lack of subject-matter jurisdiction over [a plaintiff's] FTCA claim de novo."[2] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[3] The district court here based its conclusion on the complaint and undisputed facts.[4]

---

[2] *Davila v. United States*, 713 F.3d 248, 255 (5th Cir. 2013) (citation omitted).

[3] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 287 (5th Cir. 2012) (citation omitted) [hereinafter *In re FEMA Trailer*].

[4] Gonzalez contends that some facts the district court relied upon are disputed. We find the facts pertinent to analyzing the discretionary function exception are undisputed unless noted otherwise. *See In re FEMA Trailer*, 668 F.3d at 287 (court may take into account resolved disputed facts).

4

No. 16-60062

## III.

The United States enjoys sovereign immunity from suit, meaning it cannot be sued without consent.[5] "The FTCA is recognized as providing a waiver of sovereign immunity and provides the sole basis of recovery for tort claims against the United States."[6] This waiver, however, "is subject to several exceptions."[7] The exception relevant here is the "discretionary function exception,"[8] which "preserves the federal government's immunity . . . when an employee's acts involve the exercise of judgment or choice."[9] The exception is found in 28 U.S.C. § 2680(a):

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The Supreme Court has explained, "[t]he exception covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice,' [] and 'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies."[10] "The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in

---

[5] *United States v. Navajo Nation*, 537 U.S. 488, 502 (2003) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." (quotation marks and citation omitted)); *In re FEMA Trailer*, 668 F.3d at 287.

[6] *In re FEMA Trailer*, 668 F.3d at 287 (citing 28 U.S.C. § 1346 and § 2671, et seq.); *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 n. 4. (5th Cir. 2006); *accord Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010).

[7] *Davila*, 713 F.3d at 256.

[8] *United States v. Gaubert*, 499 U.S. 315, 320–22 (1991).

[9] *Tsolmon v. United States*, 841 F.3d, 378, 380 (5th Cir. 2016) (citation omitted).

[10] *Gaubert*, 499 U.S. at 322 (citations omitted).

5

social, economic, and political policy through the medium of an action in tort.'"[11]

A two-prong test determines whether the exception applies: (1) "the conduct must be a 'matter of choice for the acting employee[;]'"[12] and (2) the "judgment [must be] of the kind that the discretionary function exception was designed to shield."[13] Both prongs must be met for the exception to apply.[14] With respect to the first prong, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary."[15] On the contrary, "[t]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'"[16] Regarding the second prong, the court "consider[s] whether the actions taken are 'susceptible to policy analysis.'"[17] "[T]he proper inquiry . . . is not whether [the official] *in fact* engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis.'"[18] In performing the two-prong test, "the question of *whether* the government was negligent is irrelevant."[19]

---

[11] *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988) (citation omitted).

[12] *Spotts*, 613 F.3d at 567 (quoting *Berkovitz by Berkovitz*, 486 U.S at 536).

[13] *Berkovitz by Berkovitz*, 486 U.S. at 536; *accord Tsolmon*, 841 F.3d at 382.

[14] *Davila*, 713 F.3d at 263.

[15] *Spotts*, 613 F.3d at 567 (citation omitted).

[16] *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S., at 536)).

[17] *Gibson v. United States*, 809 F.3d, 807, 812 (5th Cir. 2016) (citation omitted).

[18] *Spotts*, 613 F.3d at 572 (quoting *Gaubert*, 499 U.S. at 325); *accord In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Louisiana Plaintiffs)*, 713 F.3d 807, 810 (5th Cir. 2013).

[19] *See Young v. United States*, 769 F.3d 1047, 1054 (9th Cir. 2014) (quotation marks and citation omitted).

No. 16-60062

**IV.**

The FTCA's discretionary function exception bars Gonzalez's claims. The district court categorized Gonzalez's claims into two groups: (1) the alleged failures to inspect and maintain the trails, and (2) the alleged failures to warn. We adopt the same useful organization.

Gonzalez alleges the government employees failed to meet a number of provisions from the Manual and Handbook. She argues that such provisions prescribe a course of action and contends that "routine property maintenance decisions are not susceptible to the kind of policy analysis shielded by the discretionary function [exception]." Gonzalez compares the government's actions to those of a business operator who makes decisions about premises safety. The Government responds that Ranger Smith and the other USFS officials had discretion in maintaining and inspecting their trails. The Government argues that no specific law or policy proscribed how employees should inspect and maintain the trails, and that the Manual and Handbook offer "general guidance." The Government urges, "[t]he determining factor is whether the challenged actions are 'grounded in the policy of the regulatory regime,'" and concludes that "trail inspection and maintenance are part of the essence of the regulatory regime set forth in the Manual, the Handbook, and the other applicable regulations." The Government asserts that the USFS balanced resources as per USFS policy, and followed the recommendations for maintaining bicycle trails.[20]

---

[20] *See* The Handbook, Exhibit 01 in Chapter 10, which states for Class 3 developed trails, which include the Bethel Bicycle Trails: "[t]ypically maintenance conducted every 1-3 years or in response to reports of trail or resource damage or significant obstacles to Managed Use and experience level."

7

No. 16-60062

In order to determine whether an official's conduct was discretionary, we must first define that conduct.[21] Gonzalez generally suggests that the conduct at issue is some version of "failing to inspect the trails as required." The Government, in turn, describes Gonzalez as arguing "that USFS failed to perform required inspections and maintenance of the Bethel Bicycle Trails" and "further . . . that the National Quality Standards for Trails mandate hazard-free trails." To different extents, each of the above framings assumes that there were clearly prescribed requirements—an inquiry for the first prong of the discretionary function test. Moreover, Gonzalez at times suggests that Grice and Bond failed altogether to inspect the trails—but the record belies this assertion.

The Eleventh Circuit in *Autery v. United States* confronted a similar gateway framing issue. In that case, after a black locust tree in the Great Smokey Mountain National Park fell on a car, the injured passenger and estate of a killed passenger brought an FTCA claim against the United States.[22] In its discretionary function analysis, "[t]he government argue[d] that the conduct to be evaluated [was] 'the Park Service's decision to establish and implement a tree inspection program. Plaintiffs, on the other hand, contend[ed] that 'the conduct at issue [was] the park's failure to carry out the mandates of its then existing policy of identifying and eliminating known hazardous trees.'"[23] The *Autery* court rejected both descriptions.[24] It explained that "[t]he tree inspection program was designed to identify which trees were hazardous. Whether park personnel had discretion in executing that plan is

---

[21] *See Young*, 769 F.3d at 1054; *Autery v. United States*, 992 F.2d 1523, 1527 (11th Cir. 1993) ("Before we address whether the government's conduct violated a mandatory regulation or policy, we must determine exactly what conduct is at issue.").

[22] *Autery*, 992 F.2d at 1524.

[23] *Id.* at 1527 (citations omitted).

[24] *See id.*

the relevant issue."[25] "[T]he relevant inquiry here," the *Autery* Court concluded, "is whether controlling statutes, regulations and administrative policies mandated that the Park Service inspect for hazardous trees in a specific manner."[26] Similarly, the relevant inquiry in the present case is whether the controlling policies mandated the USFS to inspect and maintain the trails in a specific manner.

We find that they did not. Beginning with the first prong of the discretionary function exception test, the relevant Manual and Handbook provisions contemplate an element of choice as to how USFS employees inspect and maintain the trails. For example, Paragraph 2353.12 in the Manual instructs to "[m]anage each trail to meet the [trail management objectives] identified for that trail, based on applicable land management plan direction, travel management decisions, trail-specific decisions, and other related direction, as well as management priorities and available resources." This language contains the direction to "meet" the identified objectives, but gives room for choice based on the evaluation of various factors. Moreover, although the objectives at 2353.02 list specific goals, they do not prescribe a certain course employees must take to reach those goals. In this way, the "provisions . . . contain generalized, precatory, or aspirational language that is too general to prescribe a specific course of action for an agency or employee to follow."[27]

The Handbook, too, contemplates that employees have some discretion in maintaining the trails. For example, the exhibit in Chapter 10, Paragraph 18, for "trail operation and maintenance considerations" states that the considerations are "*general guidelines* for developing trail prescriptions and

---

[25] *Id.* at 1528.

[26] *Id.*

[27] *Freeman v. United States*, 556 F.3d 326, 338 (5th Cir. 2009).

managing, operating, and maintaining National Forest System trails."[28] It further states that "[t]he considerations are a *starting point* and likely will need to be adapted to reflect local financial capability and other circumstances."[29] General guidelines for maintaining a trail encompass "acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"[30] Here, because the "policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary."[31]

Gonzalez emphasizes one of the critical "National Quality Standards for Trails" in the Handbook that states: "hazards do not exist on or along the trail." Gonzalez asserts, "[i]t is inconceivable that a Critical National Quality Standard to inspect the trails to ensure that hazards do not exist and to 'prevent immediate and permanent injury to persons or property' is a duty left up to the choice of low level Forestry Service personnel." In response, the Government points to the footnote associated with the Critical National Quality Standards, which states "[i]f it cannot be met, action must be taken as soon as practicable to correct or mitigate the problem." This language contemplates that the standard may not be met, which cuts against Gonzalez's claim that the standard represents a mandatory prescription. Moreover, even if the standard that "hazards do not exist on or along the trail" is mandatory, the standard does not dictate how officials must meet that standard—which is what the challenged conduct concerns.

Gonzalez contends, "[i]nspecting the bicycle trail does not mean bush hogging some portion of the trail with easy access to a tractor on occasion." But

---

[28] Emphasis added.
[29] Emphasis added.
[30] *Gaubert*, 499 U.S. at 322 (citations omitted).
[31] *Spotts*, 613 F.3d at 567 (citation omitted).

even setting aside Grice's testimony to the contrary, Gonzalez cites to no provision prohibiting this understanding, nor prescribing a different understanding, of how the trails should be inspected. That the policies leave open the question of how to inspect the trails is evidence of choice. Gonzalez also argues that the officials were not familiar with the policies, but in doing so shifts the focus away from the discretionary function test and toward the merits of her negligence claims. Indeed, Grice testified he did not know what the National Quality Standards for trails were, and that he never read the "Trails Management Handbook, Trail Planning" document.[32] Gonzalez emphasizes that Bond could not remember ever inspecting the area of the Couch Loop Trail where the accident occurred, nor did he recall seeing the regulations. Gonzalez also points out that Ranger Smith "had never read the Forestry Service Regulations." Gonzalez asserts, "[t]here is no 'room for choice' if you have no idea what the standards are for performing maintenance and inspections to begin with." While the officials' lack of familiarity with the policies may be strong evidence of a breached duty, such evidence does not affect the inquiry at hand: whether the challenged actions contained an element of judgment. Gonzalez's arguments in this respect better inform the merits of her underlying claims, rather than whether the discretionary function exception applies. Based on the applicable policies, "there was 'room for choice' in making the allegedly negligent decision"[33] to not inspect and maintain the trails in a certain way. At most, the USFS officials abused their discretion, but as the Court in *Katrina Canal Breaches* reminds, such "abuse [is] explicitly immunized by the [discretionary function exception]."[34]

---

[32] He also agreed he never read the "forest service handbook."

[33] *Ashford v. United States*, 511 F.3d 501, 505 (5th Cir. 2007) (citation omitted).

[34] *In re Katrina Canal Breaches Litigation*, 696 F.3d 436, 450 (5th Cir. 2012). 28 U.S.C. § 2680(a) states in part: "Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

No. 16-60062

The challenged conduct also meets the second prong of the discretionary function exception test, as the manner in which the USFS officials inspected and maintained the trails was susceptible to policy considerations. Gonzalez asserts that, "[t]here should be little balance when it comes to the safety of the patrons versus the natural environment under the circumstances of this case. Certainly in this instance, removing the hazards and inspecting for additional hazards is reasonable and inexpensive." However, this argument concerns whether the officials best balanced the policy considerations, when the inquiry is whether the challenged actions were susceptible to policy considerations. Indeed, the purpose of the discretionary function exception is "to prevent judicial second-guessing."[35]

In *Gibson v. United States*, this Court held that the discretionary function exception was not met, because the Federal Emergency Management Agency's ("FEMA") conduct in how to provide customers access to their trailers was not susceptible to policy analysis.[36] In *Gibson*, the plaintiff "was at a FEMA storage site . . . inspecting trailers that were to be sold at auction," when he was injured while trying to exit one.[37] Gibson brought suit under the FTCA,[38] alleging a number of claims related to FEMA's policies regarding access to the trailers.[39] The government argued the discretionary function exception applied.[40] Bypassing a determination on the first prong of the test, this Court held "that FEMA's decision about how customers would enter and

---

employee of the Government, *whether or not the discretion involved be abused.*" (emphasis added).

[35] *Berkovitz by Berkovitz*, 486 U.S. at 536–37 (quotation marks and citation omitted).

[36] *See* 809 F.3d, 807, 816–17 (5th Cir. 2016).

[37] *Id.* at 809.

[38] *Id.*

[39] *See id.* at 810 (*e.g.*, "[f]ailing to provide stairs with handrails . . . to inspect mobile homes").

[40] *Id.* at 809.

exit the trailers was not the type of judgment the discretionary function exception was designed to protect."[41] The Court compared FEMA's trailer operation to that of a commercial business,[42] and found that decisions regarding trailer access concerned "'a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to . . . FEMA's[] mission as it is possible to get.'"[43]

Gonzalez cites extensively to *Gibson*, while the Government attempts to distinguish it by arguing that in *Gibson*, the United States was acting as a commercial business, but in the present case it is operating wilderness. The Government's suggestion that "wilderness cases" are distinct has merit. As the *Gibson* Court pointed out, "[r]ather differently, when the Government acts as landowner of wilderness, certain kinds of maintenance decisions have been found to contain multiple policy considerations."[44] The *Gibson* Court cited to *Theriot v. United States*,[45] which concerned how the United States Army Corps of Engineers "was to notify the public of the existence of a sill," and *Hix v. U.S. Army Corps. of Engineers*,[46] which concerned how the government was to "replace warning signs near jetties in Galveston."[47] Unlike those decisions, which concerned public safety (*Hix*), dangerous objects, vessel traffic, and economics (*Theriot*), among others, in *Gibson*, "the Government operated as a commercial business and welcomed customers to its site as if it were managing a trailer showroom."[48]

---

[41] *Id.* at 813.
[42] *See id.* at 816.
[43] *Id.* at 816–17 (citation omitted).
[44] *Gibson*, 809 F.3d at 815.
[45] 245 F.3d 388 (5th Cir. 1998).
[46] 155 F. App'x. 121 (5th Cir. 2005) (unpublished).
[47] *Gibson*, 809 F.3d at 815 (citations omitted).
[48] *Id.*

No. 16-60062

Here, the government acts more like the manager of a wilderness area than the operator of a commercial business. Decisions about how to maintain bicycle trails running through 382,000 acres of land with only two recreation technicians seem to invite, if not require, "safety, financial, and other feasibility concerns."[49] Such decisions implicate resource allocation, wilderness considerations, and public safety; in other words, they are "administrative decisions grounded in social, economic, and political policy."[50]

*Gaubert* teaches that "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."[51] The challenged actions here are grounded in USFS policy. Paragraph 2353.03 of the Manual states, for example: "Emphasize long-term cost effectiveness and need when developing or rehabilitating trails," and "Provide a trail system that is environmentally, socially, and financially sustainable." The decisions about how to inspect and maintain the bicycle trails are susceptible to policy considerations so as to satisfy the second prong of the discretionary function exception test.

Gonzalez's failure to warn claims are also barred by the discretionary function exception. Gonzalez argues that the government had a duty to warn her about the ramp, and that, "[t]he Forestry Service Regulation do not give a choice on how to mark a trail." Gonzalez points to a bevy of provisions describing sign standards, and ultimately argues, "the 8 ½ x 11 sheet of copy paper with small black letters posted amongst other cluttered papers was not a discretionary option for those in charge of maintenance and inspection." Gonzalez avers the government's "failure to adequately warn and notify

---

[49] *Spotts*, 613 F.3d at 573.

[50] *Berkovitz by Berkovitz*, 486 U.S. at 537 (quotation marks and citation omitted).

[51] *Gaubert*, 499 U.S. at 324–25.

14

No. 16-60062

[Gonzalez] of the trail closure involves considerations of safety, not public policy." The Government responds by pointing out that the Couch Loop Trail was closed due to the bridge, not the ramp. The Government insists that Grice's notice on the trailhead followed Guidelines recommendations, and reiterates the district court's conclusion that "the USFS could not possibly warn of a hazard it did not create and of which it had no knowledge." The Government further contends that the decision of how to mark a trail as closed is "grounded in social, economic, and public policy," such as aesthetic and recreation factors, which were similar to the policy considerations in *Katrina Canal Breaches.*

Once again, we must first define the challenged conduct. Gonzalez alleges the USFS "fail[ed] to adequately warn of a known condition and further to warn, based upon the passage of time, of a dangerous condition imputed to the Appellee which caused the Appellant's injuries."[52] The Government characterizes the challenged conduct as "how to mark the trail as closed." Notably, the district court found that "the record reflects that the USFS was unaware of the ramp . . . until after this incident, such that the ramp did not constitute a 'known hazard.'" It further suggested that the USFS did not create the ramp. Because "[f]actual findings are reviewed for clear error,"[53] and because the district court's findings are grounded in the record, this Court accepts the findings that the USFS did not create the ramp, nor know about the ramp. [54] Accordingly, the challenged conduct is the manner in which the

---

[52] Gonzalez also at times asserts that the USFS failed to adequately warn people about the bridge, but this claim falls short. Gonzalez never made it to the bridge and was not injured on the bridge.

[53] *In re Katrina Canal Breaches Litig.*, 696 F.3d at 444 (citation omitted).

[54] Gonzalez argues that the Mississippi case of *Vu v. Clayton,* 765 So.2d 1253 (Miss. 2000) supports her proposition that the government can be deemed to have constructive knowledge of a hazard based on the passage of time. However, *Vu* concerns a business invitee's premises liability claim based on Mississippi law, not whether constructive knowledge is a viable theory in an FTCA discretionary function exception analysis.

trail was marked as closed based on a hazard not known, nor created, by the USFS. Given this, Gonzalez has not pointed to a policy that "specifically prescribes a course of action."[55] Indeed, it is difficult to conceive of a provision mandating the USFS take specific action to warn the public about *unknown* hazards.[56]

But even if we do not accept the district court's findings with respect to the USFS having no knowledge of the bridge,[57] the discretionary function exception would still apply. The USFS's decision to close the Couch Loop Trail in the way it did, i.e., by posting the 8 1/2" x 11" notice at the trailhead, "involve[ed] 'an element of judgment or choice.'"[58] "If a statute, regulation, or policy leaves it to a federal agency or employee to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary."[59] The Sign and Poster Guidelines grant discretion in posting closure signs. For example, Chapter 1.3, "Principles," provides, "[s]igns and posters shall be designed, installed, positioned, and maintained to" "[f]ulfill a legal requirement or an important need," "[c]ommand attention, "[c]onvey a clear, simple meaning," "[c]ommand respect," and "[g]ive adequate time for proper response." Although one could argue these points are mandatory, they do not prescribe how to fulfill them. Moreover, Chapter 5.1, the introduction to the "Trail Signing" chapter, states,

---

[55] *Berkovitz by Berkovitz*, 486 U.S. at 536.

[56] *Contra Young*, 769 F.3d at 1054 ("In our view, the 'specific allegatio[n] of agency wrongdoing' that we must use in determining whether the discretionary function exception applies in this case is Plaintiffs' allegation that NPS staff failed to warn of a known, latent hazard that the agency itself created.").

[57] The challenged action would then be whether the controlling policies mandated the USFS mark the trail as closed in a specific manner.

[58] *In re Katrina Canal Breaches Litig.*, 696 F.3d at 449 (citations omitted).

[59] *Id.* (quotation marks and citation omitted).

"[t]his chapter provides *standards and guidelines* for the use of signs and posters on National Forest System trails."[60]

Still, other provisions in the Sign and Poster Guidelines contain specific instructions. For example, Chapter 1.7.1 indicates designs, colors and "word messages" for signs and posters. It states, "[s]tandard colors have been established for specific purposes and types of signs. It is critical to use the colors specified consistently and only for these purposes to facilitate sign recognition and user response." That being said, Table 5-1 in Chapter 5 blunts the force of Chapter 1.7.1's directive when it gives a "selection guide for materials, colors, and finishes for trail signs, markers, and supports," with several options based on various factors. Reviewing the provisions cumulatively, we detect the requisite element of discretion for the closure sign at issue.[61]

Gonzalez points to Chapter 13.2.4, Sign Placement and Mounting, directing to "[p]ost signs conspicuously. Avoid cluttering signs in one location or where objects may obscure them." But even if this provision can be said to prescribe a specific course of action, Chapter 13.2, discussing "Safety Signs," notes that "[t]hese do not include safety signs designed for roads, recreation sites, [or] *trails*."[62] Although Gonzalez argues "[t]he sign posted by Agent Grice does not meet the standards," she does not explain how. Gonzalez avers, "Agent Grice acknowledged that the sign he posted did not meet the Forestry Standards," but does not provide support. Gonzalez asserts, "[t]he Forestry Service Regulation[s] . . . provide the exact sign, color and instructions for closure of trails and notification of dangerous conditions to patrons on the

---

[60] Emphasis added.

[61] *See In re Katrina Canal Breaches Litig.*, 696 F.3d at 452 ("[T]he ostensibly mandatory language, when read in light of the broad goals of the [policies], allowed for the exercise of judgment and choice." (quotation marks and citation omitted)).

[62] Emphasis added.

government's premise." However, Gonzalez fails to specify what provisions regarding sign, color, and instructions the officials had no choice but to follow with respect to creating or posting a closure sign. In short, Gonzalez fails to identify specific provisions that mandate an approach to creating or placing closure signs in these circumstances.

"The next question is whether the government's decision as to the appropriate action for [marking the trail as closed] was based on considerations of public policy."[63] We find it was. For instance, Chapter 5.1 of the Sign and Poster Guidelines states, in relevant part, to select signs to consistently provide: "Route identification," "Guidance and distance [information]," "Safety features, such as snow shelters and resorts," "Route reassurance and confirmation," "User safety: warnings of known hazards," "Notice of restrictions where use control is necessary," and "Protection of resources." These factors—particularly public safety and the protection of resources—are similar to those that this Court has found satisfy the public policy prong of the discretionary function test.[64]

Gonzalez cites to *Cope v. Scott*,[65] for support that a government's failure to place warning signs did not satisfy the policy prong of the discretionary function test. The D.C. Circuit in *Cope* found that "any discretion exercised by the government with respect to where and how to post signs warning of dangerous road conditions did not implicate 'political, social, or economic'

---

[63] *Theriot*, 245 F.3d at 399.

[64] *See In re Katrina Canal Breaches Litig.*, 696 F.3d at 452 ("The regulation instructed the Corps to consider several factors, some technical (e.g., shore erosion and accretion) but also many that concern policy (summarized by the catch-all 'needs and welfare of the people'), satisfying prong two as well."); *Theriot*, 245 F.3d at 399–400 (noting policy factors like "the degree of danger an object poses, the vessel traffic type and density, the location of the object in relation to the navigable channel, the history of vessel accidents, and the feasibility and economics, including costs, of erecting and maintaining physical markers in light of the available resources").

[65] 45 F.3d 445 (D.C. Cir. 1995).

policy choices."[66] But *Cope* is inapposite, as it involved signs on a roadway, not in the wilderness.[67] Gonzalez additionally contends "[i]t is inconceivable that the public policy considerations of a pleasant nature experience in an aesthetic atmosphere forego basic patron safety standards." Once again, this argument addresses whether the officials best balanced the policy considerations, when the inquiry is whether the challenged actions were susceptible to policy considerations. Gonzalez further maintains, "[t]he Government offered no evidence to show that its failure to post standard signage as required by regulations for closures was as a result of a policy decision." However, "the proper inquiry . . . is not whether [the official] *in fact* engaged in a policy analysis when reaching his decision but instead whether his decision was 'susceptible to policy analysis.'"[68] Because the USFS's decision about how to post notice of the closed trail was based on "considerations of social, economic, or political public policy"[69] it satisfies the second prong of the discretionary function exception test.

AFFIRMED.

---

[66] *Cope*, 45 F.3d at 446.

[67] *Id.* at 452 ("We agree that in certain circumstances, decisions will be exempt under the FTCA because they involve difficult policy judgments balancing the preservation of the environment against the blight of excess signs. But this is not one of those circumstances. Beach Drive is not the Grand Canyon's Rim Drive, nor Shenandoah's Skyline Drive. Here, the Park Service has chosen to manage the road in a manner more amenable to commuting through nature than communing with it.").

[68] *Spotts*, 613 F.3d at 572 (quoting *Gaubert*, 499 U.S. at 325)).

[69] *Theriot*, 245 F.3d at 397 (citation omitted).