# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2024

Lyle W. Cayce
Clerk

No. 22-40835

—————————

Hermilo Cantu Silva,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:19-CV-151

———————————————————————

Before Smith, Engelhardt, and Ramirez, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Hermilo Cantu Silva sustained a gunshot wound when a Border Patrol Agent attempted to apprehend him for suspected illegal entry into the United States. Cantu Silva sued the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, asserting several intentional tort claims and negligence. The matter went to a bench trial solely on the claim of negligence. At the close of evidence, the trial court *sua sponte* raised the potential applicability of the discretionary function exception. The parties briefed the issue, and the trial court determined that the discretionary function exception deprived the court of jurisdiction. We AFFIRM.

No. 22-40835

## I.

In January 2012, Cantu Silva entered the United States without legal documentation with a group of about ten individuals. On the day in question, Border Patrol Agents Ruben Mendoza and Eduardo Enrique De La Garza were on patrol and observed a truck pass, which they suspected of "alien smuggling." Cantu Silva was riding in the bed of the truck. Shortly thereafter, the truck stopped, and the driver of the truck yelled at Cantu Silva and the occupants to run.

Cantu Silva ran from the agents and passed a dilapidated barb wire fence. Agent Mendoza yelled at the individuals to stop in Spanish. Meanwhile, Agent De La Garza testified that he stayed behind the barb wire fence line to secure the still-running truck. Cantu Silva then encountered a clearing with a high cyclone fence. He testified he saw "two people in green" with "guns in their hands" running towards him. At that point, Agent Mendoza claims that two individuals, including Cantu Silva, turned around and took what was perceived to be an aggressive or "fighting stance." He claims he feared for his life, drew his service weapon, and maintained it in a "low-ready" position. After he drew his firearm, the individuals turned and ran to the fence. Cantu Silva disputes the circumstances under which Agent Mendoza decided to draw his firearm.

Cantu Silva attempted to climb the fence. He made it approximately two feet up the fence when he felt someone grab his left shoulder. It was Agent Mendoza. Cantu Silva testified that he threw himself to the ground and when he landed on his knees lifted his hands up to his head in a surrendering posture. The firearm in Agent Mendoza's right hand discharged and Agent Mendoza let go of Cantu Silva. Cantu Silva had been shot in the right buttock. He received first aid for his wound and was subsequently transported to a hospital via ambulance. After some time,

Border Patrol apprehended other individuals who fled and identified ten total undocumented aliens, including Cantu Silva.

In January 2014, Cantu Silva timely submitted his administrative claim to the U.S. Department of Homeland Security ("DHS"). DHS denied the claim in May 2019. After exhausting his administrative remedies, Cantu Silva filed his complaint in the Southern District of Texas, Laredo Division, pursuant to the FTCA. He brought claims for assault, battery, intentional infliction of emotional distress, and negligence based on the shooting. The parties litigated the case for over two years and filed no pretrial dispositive motions.

In October 2021, the parties filed their joint pretrial order, in which Cantu Silva solely argued negligence. In April 2022, the trial court held a bench trial. At the close of evidence, the trial court *sua sponte* raised the potential applicability of the discretionary function exception to the FTCA's waiver of sovereign immunity and ordered the parties to brief the issue. The Government then filed a Rule 12(b)(1) motion. Cantu Silva filed a response. The trial court issued its opinion and order determining that the discretionary function exception deprived the court of jurisdiction. This appeal followed.

## II.

The district court's dismissal of a case for a lack of subject matter jurisdiction is a question of law reviewed *de novo*, applying the same standard as the district court. *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010). In deciding such a motion, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.

2001)). "In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2001) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party asserting jurisdiction bears the burden of proving its existence. *Ramming*, 281 F.3d at 161.

## III.

## A.

As an initial matter, Cantu Silva claims that the trial court erred by failing to consider Agent Mendoza's unconstitutional conduct as barring the discretionary function exception of the FTCA's waiver of sovereign immunity. Cantu Silva notes on appeal, and reiterated at oral argument, that he only waived his intentional tort claims, not the claim of negligence or the constitutional claims. Oral Argument at 2:39–3:33, 14:11–24. The Government argues that Cantu Silva has abandoned all his claims, except negligence. We agree with the Government.

Cantu Silva waived his constitutional claims, as indicated on at least two separate occasions: in the joint pretrial order and in his response to the Government's motion to dismiss. In the joint pretrial order, Cantu Silva's sole contention was that of negligence. And, in Cantu Silva's response to the 12(b)(1) motion, he failed to argue that Agent Mendoza's conduct violated the Fourth Amendment or any other constitutional provision. The trial court likewise determined that Cantu Silva abandoned his constitutional claims by failing to offer arguments in support. In this court, failure to pursue a claim may constitute abandonment. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *see also Vela v. City of Houston*, 276 F.3d 659, 678 (5th Cir. 2001). The record reflects that Cantu Silva has abandoned his constitutional claims.

## B.

"The FTCA waives sovereign immunity and permits suit against the United States for claims sounding in state tort law for money damages." *Spotts*, 613 F.3d at 567 (citing 28 U.S.C. § 2674). It provides trial courts with jurisdiction over monetary claims against the Government for the negligent or wrongful acts of its employees "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under the FTCA, however, the liability of the United States is subject to various exceptions, *see id.* § 2680, including the discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315, 322 (1991). The exception preserves the Government's sovereign immunity when the plaintiff's claim is based on an act by a government employee that falls within the employee's discretionary authority. 28 U.S.C. § 2680(a).

The Supreme Court has developed a two-part test, known as the *Gaubert* test, to determine when the exception applies. First, the court considers whether the relevant conduct is "discretionary in nature," and involves "an element of judgment or choice." *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). Second, the court determines whether the judgment is "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quoting *Berkovitz*, 486 U.S. at 536). The exception "protects only governmental actions and decisions based on considerations of public policy." *Spotts*, 613 F.3d at 568 (cleaned up). "[I]f a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324. Both prongs must be met for the exception to apply. *Gonzalez v. United States*, 851 F.3d 538, 544 (5th Cir.

No. 22-40835

2017). The plaintiff carries the burden of establishing that the discretionary function exception does not apply. *Spotts*, 613 F.3d at 568.

**1.**

Cantu Silva primarily challenges the first prong of the *Gaubert* test, arguing that the trial court erred in not focusing on Agent Mendoza's use of deadly force.[1] In response, the Government argues that whether Agent Mendoza shot Cantu Silva is of no consequence because Cantu Silva has repeatedly asserted that Agent Mendoza's conduct was an "unintentional act of negligence."

Caselaw dictates that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case." *Berkovitz*, 486 U.S. at 536 (citation omitted). The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive." *Id.* "If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Gaubert*, 499 U.S. at 324. "[T]he exception fails to protect officers only when the statute governing the action 'giv[es] *specific* direction as to any of these functions in a way that would make [the acts] nondiscretionary.'" *Tsolmon*, 841 F.3d at 384 (quoting *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) (emphasis in original)). In other words, "officers are unprotected only when they use their discretion to act in violation of a statute or policy that specifically directs them to act otherwise."

---

[1] Oral Argument at 2:27-41, 2:54–3:53, 4:10–34, 5:25–55, 8:56–9:17, 10:30–38.

*Tsolmon*, 841 F.3d at 384 (citing *Collins v. United States*, 783 F.2d 1225, 1230–31 (5th Cir. 1986)).

The focus is on the nature of Agent Mendoza's conduct and the text of the U.S. Customs and Border Protection Use of Force Policy Handbook (the "Handbook"). The relevant conduct at issue is Agent Mendoza's decision to draw his firearm and not re-holster it during the arrest.[2] The trial court focused on the same.

As previously noted, the only issue before the trial court was that of negligence. To frame it in other words, Cantu Silva claims that Agent Mendoza "negligently shot [Cantu Silva] and caused damages." The trial court determined that Agent Mendoza's negligence was "irrelevant to the application of the discretionary function exception." ROA.1681 (citing *Hix v. U.S. Army Corp. of Eng'rs*, 155 Fed App'x 121, 125 n.4 (5th Cir. 2005); and then citing *Buchanan v. Untied States*, 915 F.2d 969, 970–71 (5th Cir. 1990) (explaining that the discretionary function exception "applies regardless of whether the government official has exercised due care")). This court has held that the relevant question "is not whether the Government acted with due care but whether the Government's conduct was the result of the performance of a discretionary function." *Lively v. United States*, 870 F.2d 296, 298 (5th Cir. 1989). Other circuits have stated the same. *See, e.g.*, *Kohl v. United States*, 699 F.3d 935, 941 (6th Cir. 2012) (citation omitted) ("Negligence, however, is irrelevant to our inquiry at this point."); *Autery v. United States*, 992 F.2d 1523, 1528 (11th Cir. 1993) ("The FTCA expressly provides that the exception applies to policy judgments, even to those constituting abuse of discretion.") (collection of cases). It is the Handbook,

---

[2] Cantu Silva conceded at oral argument that the "decision to chase the immigrants," the "decision to attempt to apprehend those suspects," and the "decision whether to use force at all" were all discretionary. Oral Argument at 6:53–7:10.

not Agent Mendoza's duty of due care, "that determines whether certain conduct is mandatory for purposes of the discretionary function exception." *Autery*, 992 F.2d at 1528; *see also Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997). The relevant inquiry is whether the relevant policy mandated that Agent Mendoza conduct an arrest in a specific manner. *Tsolmon*, 841 F.3d at 384.

Agent Mendoza testified that he was effectuating an arrest and was confronted by two individuals who took what was perceived as an aggressive power or "fighting stance" towards him. Fearing for his life, he drew his service weapon and maintained it in a "low ready" position. The individuals then turned and ran to the fence. He accidentally discharged his firearm while attempting to grab one of the men (Cantu Silva) from the fence. The trial court found Agent Mendoza's version of events as to what prompted him to withdraw his weapon credible. The Handbook states "[o]nly that force which is both reasonable and necessary may be used in any given situation" and what constitutes reasonableness is to be judged by the individual agent. The Handbook continues that "its calculus must embody an allowance for the fact that law enforcement officers/agents are often forced to make split-second decisions about the amount of force necessary in a particular situation. Necessary means that some force is required to carry out one's duties as a law enforcement officer/agent." Moreover, the agents are to act in a "professional manner" and thus "shall not carelessly or unnecessarily display firearms and/or intermediate force devices. The authority to carry this equipment carries with it an obligation and responsibility to exercise discipline, restraint and good judgment." Applied here, Agent Mendoza perceived a life-threatening situation that caused him to make a split-second decision to draw his firearm in a low-ready position. He also had his firearm drawn when he pursued the individuals once they turned to run towards the fence. The relevant portions of the Handbook granted Agent Mendoza

discretion to draw his firearm and not re-holster it under the circumstances. Agent Mendoza neither "carelessly" nor "unnecessarily" displayed his firearm when confronted by the two individuals. And, as determined by the trial court, the Handbook does not directly require an agent to re-holster his gun while pursuing fleeing subjects.

Notably, the Handbook differentiates "intermediate force" from "deadly force." Cantu Silva argues that Agent Mendoza used "deadly force," *i.e.*, the discharge of the firearm. He also claims that the trial court erred in charactering Agent Mendoza's drawing his gun as "intermediate force" under Cantu Silva's version of the facts. The Handbook permits "intermediate force" for handling resisting subjects "when the use of deadly force is not appropriate." "Intermediate force" is force "that is neither likely nor intended to cause death or serious physical injury." The Handbook expressly states that "[t]he act of establishing a grip, drawing a weapon or pointing a weapon does not constitute the use of deadly force." The trial court likened Agent Mendoza's decision to draw his gun under Cantu Silva's version of the facts as "intermediate force." The trial court did not err in its findings. *See Tsolmon*, 841 F.3d at 384. As to Cantu Silva's contention regarding "deadly force," Agent Mendoza did not intentionally discharge his firearm. Cantu Silva concedes this. Oral Argument at 2:30–55. Negligent discharge of a firearm does not constitute deadly force. Without the intent to discharge the firearm, Cantu Silva's claim fails.

Thus, in light of the foregoing, Agent Mendoza's conduct—his decision to draw his gun and not re-holster—was discretionary. Cantu Silva has not pointed to any nondiscretionary duties that were violated by the exercise of this discretion. Accordingly, Agent Mendoza's conduct meets the first prong of the *Gaubert* test.

**2.**

Under the second prong, we agree with the trial court that Agent Mendoza's conduct was based on considerations of public policy, and thus was the kind of conduct the exception was designed to shield. *Gaubert*, 499 U.S. at 322–23.

"The proper inquiry under prong two is not whether [the agent] in fact engaged in a policy analysis when reaching his decision but instead whether his decision was susceptible to policy analysis." *Spotts*, 613 F.3d at 572 (emphasis removed) (internal quotation marks and citation omitted). Decisions about when, why, and under what circumstances to draw a firearm when confronted with aggression are susceptible to policy analysis. *See Hart v. United States*, 630 F.3d 1085, 1090–91 (8th Cir. 2011) (collection of cases). And in the context of border security, courts recognize that "law enforcement decisions regarding immigration and criminal investigations and arrests are clothed in public policy considerations." *Tsolmon v. United States*, No. H-13-3434, 2015 WL 5093412, at *11 (S.D. Tex. Aug. 28, 2015), *aff'd*, 841 F.3d 378 (5th Cir. 2016). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324.

Here, the relevant conduct was Agent Mendoza's decision of how to use force in the course of investigating a potential crime and effectuating an arrest. Because the governing policies, as reflected in the Handbook, granted discretion, there is a "strong presumption" that it is grounded in policies that led to its enactment. *Id.* Cantu Silva's argument that Agent Mendoza's lack of firearm safety removed it from public policy consideration is without merit. The focus is not on whether Agent Mendoza exercised due care, but

whether his conduct was the result of the performance of a discretionary function. *See Lively*, 870 F.2d at 297–98. As discussed *supra*, we hold it is. We thus conclude that Agent Mendoza's decision was the type of policy decision protected by the discretionary function exception and therefore meets the second prong of the *Gaubert* test.

Because both prongs of the *Gaubert* test are met, we conclude that the discretionary function exception precludes subject matter jurisdiction over Cantu Silva's FTCA claim.

## IV.

For the reasons stated above, we AFFIRM.