**REVISED April 25, 2018**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
April 24, 2018

Lyle W. Cayce
Clerk

No. 16-51476

GUADALUPE CHAIDEZ CAMPOS,

>    Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

>    Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, ELROD, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Guadalupe Chaidez Campos sued the Government for false arrest and false imprisonment under the Federal Tort Claims Act. The district court dismissed her claims for lack of subject matter jurisdiction. We AFFIRM the district court's dismissal but VACATE and REMAND so that the court may revise its final judgment to dismiss Campos's claims without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2012, Campos entered the United States without legal authority. United States Customs and Border Protection ("CBP") officers

No. 16-51476

issued her a Notice and Order of Expedited Removal. Prior to Campos's removal, though, she pled guilty to one count of attempted illegal reentry, in violation of 8 U.S.C. § 1326. Campos was sentenced to 11 months of imprisonment and three years of supervised release. While she was incarcerated, Campos applied for and was granted U nonimmigrant status. We will discuss the purpose and effect of that status later.

We will set out the factual events of the dispute by quoting from the first amended complaint. We start here because of the district court's statement that it "has not considered the *substance or value* of any of the Government's exhibits" offered in its motion to dismiss:[1]

> On or about November 14, 2013, Ms. Chaidez Campos reported to the federal probation office for the Western District of Texas, El Paso Division, in El Paso, Texas with her one-year-old child, Emmanuel Ochoa, and Emmanuel's father, Jesus M. Ochoa Perez.
>
> At that time, Ms. Chaidez Campos was in the United States in lawful immigration status because the Secretary of Homeland Security, through the U.S. Citizenship and Immigration Services (USCIS), granted her U nonimmigrant status as a victim of a crime.
>
> When Ms. Chaidez Campos arrived for her appointment with her federal probation officer, she was made to wait and then was met by a Customs and Border Protection (CBP) officer.
>
> The CBP officer separated Ms. Chaidez Campos from her child.
>
> Ms. Chaidez Campos pleaded with the CBP officer, telling the officer that Ms. Chaidez Campos was not deportable because she had been granted U nonimmigrant status.
>
> Ms. Chaidez Campos then presented the CBP officer with proof of Ms. Chaidez Campos' lawful temporary resident status in the form of her Employment Authorization Document (EAD).

---

[1] Omitted from our quotations of the factual section of the complaint are the paragraph numbers and also the intermittent paragraphs that detail legal arguments.

No. 16-51476

On its face, Ms. Chaidez Campos' EAD contained the correct spelling of her name, correct alien number (A#), correct birth date, country of origin, and nonimmigrant status.

The CBP officer continued to detain Ms. Chaidez Campos after she presented the officer the EAD showing that Ms. Chaidez Campos was in the United States with lawful temporary residency status.

The CBP took Ms. Chaidez Campos into custody and transferred her to the Paso del Norte (PDN) Port-of-Entry in El Paso Texas.

At the PDN Port-of-Entry, CBP searched Ms. Chaidez Campos, held her in a cold room, and eventually removed her to Mexico that same day, November 14, 2013.

Ms. Chaidez Campos attempted at least two times to return to the United States but was denied admission. She remained outside the United States until January 17, 2014.

What these allegations do not address is what the CBP officers did to investigate Campos's immigration status, what they found, and why they decided to remove her. Though the district court in its order dismissing the complaint stated that it did not consider the "substance or value" of the exhibits the Government attached to its motion to dismiss, the court did indicate that it considered "for context" that she pled guilty to attempted illegal re-entry after being previously removed, was sentenced by this same district judge, and served 11 months in prison.

Campos filed suit in the United States District Court for the Western District of Texas against the United States, alleging violations of her civil rights and requesting relief under the Federal Tort Claims Act ("FTCA"). Campos claimed that she was falsely arrested and imprisoned by the CBP officers because the officers detained her after she presented them with an EAD, which in her view conclusively showed entitlement to remain in the United States.

3

No. 16-51476

The Government filed a motion to dismiss, contending that the district court lacked subject matter jurisdiction over Campos's FTCA claims because the CBP officers' actions fell within the "discretionary function exception" to the FTCA's waiver of sovereign immunity. The district court agreed and dismissed. Campos timely appealed.

DISCUSSION

We are reviewing a district court's dismissal of a suit due to the absence of subject matter jurisdiction. *See* FED R. CIV. P. 12(b)(1). Our review of such a dismissal is *de novo*, applying the same standard as the district court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof. *Id.* In resolving a motion under Rule 12(b)(1), the district court

> has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.

*St. Tammany Par., ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 315 (5th Cir. 2009) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

The district court did not resolve any disputed facts. As to undisputed facts, the Government attached to its motion to dismiss affidavits of two CBP officers involved with the investigation on the day of Campos's removal and three documents related to Campos's 2013 conviction that sent her to prison for 11 months and also led to an order for her removal that would be enforced at the end of her incarceration. Some and perhaps most of the information in those exhibits would have been undisputed. As mentioned earlier, though, the court declared that it had not considered the "substance" of the exhibits.

4

Instead, it considered for contextual reasons only the evidence of Campos's prior conviction, about which the complaint was completely silent.

We conclude that the district court, by its reference to using the conviction information for context, necessarily meant that it considered the undisputed record of Campos's conviction and its effects. This included the order for removal that gave the CBP officers a basis for a reasonable belief that she was impermissibly in the country and was subject to being removed.[2] We reach that conclusion due to the district court's explaining in its order dismissing the case that a CBP officer has statutory authority to arrest without a warrant when "the agent has 'reason to believe' that the person is in the United States in violation of any immigration laws or regulations and is 'likely to escape before a warrant can be obtained for [her] arrest.'" *See* 8 U.S.C. § 1357(a)(2). When the court then held that these CBP officers had used this authority, there must have been information that provided a reason to believe, even if incorrectly, that Campos was present improperly. CBP officers do not have discretion to conduct an investigation, find nothing, and deport anyway.

When a district court does not detail the factual determinations it made to support its ruling, "an appellate court may determine for itself, on the basis of the record and any statements made by the district court . . . what, if any, implicit factual findings it made." *Williamson*, 645 F.2d at 414. As will become clear, the only implied factual findings in the district court's order deal with Campos's prior conviction that led to an order that she be removed at the end of her prison term. Our analysis of the district court's ruling does not reveal any reliance on the affidavits of the CBP officers.

---

[2] Campos filed a motion to strike some but not all of the exhibits. One exhibit that she urged be used by the district court was the removal order itself, saying it would "assist the [c]ourt in determining whether it ha[d] jurisdiction." Thus, both as a matter of seeking the contextual information and because Campos sought the order's consideration, the 2012 order for Campos's removal is properly considered on appeal.

Thus, this dismissal was based on the complaint plus the undisputed facts of Campos's criminal history and of the removal order. "In such a circumstance, our review is limited to determining whether the district court's application of the law is correct and whether the facts are indeed undisputed." *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991).

Campos presents three arguments. First, she argues the district court erred in concluding that her claims fell within the discretionary function exception because the law enforcement proviso controls over the exception. Second, Campos asserts the district court erred in applying the discretionary function exception because it is inapplicable here. Finally, Campos contends the district court erred in not applying the law enforcement proviso to her FTCA claims.

We first discuss the pertinent statutory provisions and then address each of Campos's arguments.

## I.    *The Federal Tort Claims Act*

"Courts consider whether the FTCA applies via a Rule 12(b)(1) motion, because whether the government has waived its sovereign immunity goes to the court's subject matter jurisdiction." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016).

The FTCA waives the Government's sovereign immunity and permits suit against it for certain tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The Act also provides federal district courts with exclusive jurisdiction over monetary damage claims against the Government for "personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.* § 1346(b)(1).

No. 16-51476

The Government's liability for such claims is not absolute. Section 2680 of the FTCA outlines exceptions that block the FTCA's waiver of the Government's sovereign immunity. If an exception applies, a plaintiff's FTCA claim is barred, and a federal court is without subject matter jurisdiction over the claim. *See, e.g.*, *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc).

Two subsections of Section 2680 are relevant. One is Section 2680(a), commonly referred to as the "discretionary function exception," which excepts any claim that is based upon a Government employee's performance of a "discretionary function or duty . . . whether or not the discretion involved be abused." The other is Section 2680(h). It excepts from the waiver of immunity certain tort claims, including false arrest and false imprisonment, committed by a Government investigative or law enforcement officer. Section 2680(h), though, does allow suits based on "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). This second quoted portion of Section 2680(h) is often labeled the "law enforcement proviso." *See Tsolmon*, 841 F.3d at 381.

II.    *Relationship between the exception and the proviso*

Campos contends the district court erred in considering the discretionary function exception. Campos argues the district court's consideration of the exception was error because "properly alleged claims under the law enforcement proviso always trump the discretionary function exception and thus, there is no need to determine whether the discretionary function [exception] shields the government from liability."

Campos's argument is foreclosed by this court's precedent. Neither the discretionary function exception nor the law enforcement proviso "exist[s]

7

independently of the other nor does one predominate over the other." *Sutton v. United States*, 819 F.2d 1289, 1295 (5th Cir. 1987). "[I]t is both impossible and certainly inappropriate for us to declare categorically — or try to state in a principled way — the circumstances in which either the discretionary function exception or the law enforcement proviso governs to the exclusion of the other." *Id.* at 1298.

Thus, we turn to the circumstances here to resolve how the two parts of Section 2680 function in this case.

## III. *Applicability of the discretionary function exception*

We use a two-part test to determine whether government officials' actions fall within the discretionary function exception. *See Tsolmon*, 841 F.3d at 382. The plaintiff has the burden of establishing that the test is not satisfied. *See id.* First, the relevant employees' conduct must be a "matter of choice." *Id.* (quoting *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010)). Second, the choice or "judgment must be of the kind that the discretionary function exception was designed to shield." *Id.* (alterations and citation omitted).

The district court determined that the discretionary function exception applied. Campos has challenged the district court's conclusion only as to whether the CBP officers had a choice regarding their actions. Thus, because it is uncontested, we accept for purposes of this appeal that if the conduct was a matter of choice, it was the kind of choice that the discretionary function exception was designed to shield. *See, e.g.*, *United States v. Elashyi*, 554 F.3d 480, 494 n.6 (5th Cir. 2008).

Government officials do not have relevant discretion when "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere

to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "In other words, the discretionary function exception does not apply if the challenged actions in fact violated a federal statute, regulation, or policy." *Spotts*, 613 F.3d at 567.

Campos argues that the exception does not apply because the Government "points to no statute or regulation to support its position that [Campos's] EAD is not proof of immigration status." This argument reverses the proper legal inquiry. Campos, not the Government, must direct us to authority that the officer was required to allow Campos to remain upon being presented with an EAD under the circumstances of this case. *See Tsolmon*, 841 F.3d at 382.

Campos's basic point is that the EAD is unequivocal proof of the right to remain in the United States. She argues that clarity comes from federal regulations, a federal statute, and the Fourth Amendment.

In deciding what was clear, we start with the regulations. Campos's counsel was asked at oral argument to identify the regulation that provided for an EAD to operate as proof of a person's lawful immigration status and removed an officer's discretion to detain an individual who presented an EAD.[3] Campos's counsel cited 8 C.F.R. § 264.1(b). That regulation is entitled "Registration and fingerprinting," lists forms, and states that these "forms constitute evidence of registration." § 264.1(b). The form designation for an EAD is I-766. *Id.* Campos's EAD is in the record. It has "Employment Authorization Card" printed across the top, contains her photograph, and resembles to some extent a driver's license. In bold letters on the bottom is the

---

[3]    http://www.ca5.uscourts.gov/OralArgRecordings/16/16-51476_12-6-2017.mp3    at 1:43–1:56; 3:40–4:10; 5:10–5:25; 6:07–6:60; 7:25–7:34; 8:37–8:50.

phrase "Not Valid for Reentry to the U.S." We examine what "registration" means in order to understand what an I-766 evidences.

Aliens are required to register with the Government. 8 U.S.C. § 1302. Once an alien is registered, the Government issues to the alien "a certificate of alien registration or an alien registration receipt card." *Id.* § 1304(d). An alien's failure to maintain possession of the certificate of alien registration or alien registration receipt card is punishable as a misdemeanor with a fine not to exceed $100, imprisonment of not more than thirty days, or both. *Id.* § 1304(e). When the I-766 form of an EAD was approved by a final rule promulgated in 1996, it was described as a centrally-issued, more secure proof of employment authorization that would replace paper documents. 61 Fed. Reg. 46,534, 46,536.

It appears that Campos's EAD, whose commencement date is October 1, 2013, was issued because Campos, while still in prison, was granted a U-1 nonimmigrant visa. Such a visa is issued if the Secretary of the Department of Homeland Security determines an alien has suffered substantial physical or mental abuse as a victim of criminal activity. *See* 8 U.S.C. § 1101(a)(15)(U).

A regulation entitled "Alien Victims of Certain Qualifying Criminal Activity" provides the procedure, the specifics of eligibility, and the benefits that arise from a U-1 nonimmigrant visa. 8 C.F.R. § 214.14. One benefit is automatic entitlement to work: any "alien granted U-1 nonimmigrant status is employment authorized incident to status," and an EAD is issued automatically. *Id.* § 214.14(c)(7). That regulation follows from a statute on which Campos relies providing that those who have U nonimmigrant status must be granted authorization to work. 8 U.S.C. § 1184(p)(3).

The information on the EAD includes a section entitled "Category." On Campos's card is printed "A19." According to Campos, that refers to the classes of aliens authorized to accept employment listed in Section 274a.12 of the

regulations.    Subpart (a)(19) of that section is for an "alien in U-1 nonimmigrant status, pursuant to 8 CFR 214.14, for the period of time in that status, as evidenced by an employment authorization document issued by USCIS to the alien."  8 C.F.R. § 274a.12(a)(19).  We see the logic of Campos's representation, but we have not been directed to any regulation that explains the "A19" on Campos's card.

Eligibility for a U-1 visa can exist even for someone like Campos who was subject to a final order of removal.  *Id.* § 214.14(c)(1)(ii).  Importantly to Campos's arguments here, a regulation provides that any "order of exclusion, deportation, or removal issued by the Secretary . . . [is] deemed canceled by operation of law as of the date of USCIS' approval of Form I-918," which is the form on which an application for a U-1 visa is made.  *Id.* § 214.14(c)(5)(i).

Our question, however, is not whether there was any correlation between "A19" in the "Category" section of the EAD and a statute indicating an alien's particular status.  Instead, we ask whether there was any statute or regulation that "specifically prescribes a course of action" that removed all discretion from CBP officers upon being presented with an EAD card because "officers are unprotected [from liability] only when they use their discretion to act in violation of a statute or policy that specifically directs them to act otherwise." *Tsolmon*, 841 F.3d at 382, 384.

Before seeking to pull all this together, we examine the statute Campos has cited, which she says prohibits her arrest because of the EAD:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant –
>
> (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States;
>
> (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission,

exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]

8 U.S.C. § 1357(a)(1)–(2). The Government relies on the statutory right to arrest when the officer has reason to believe the alien is improperly present and is likely to escape before a warrant can be obtained. *Id.* § 1357(a)(2).

Our analysis of this statute starts with a recent opinion applying the discretionary function exception to the decision that CBP officers made to detain an alien. *Tsolmon*, 841 F.3d at 384. There, the alien did not have possession of any documentation showing his lawful status. *Id.* at 380. Officers searched for some time in computer records to find what the alien said was his H-1B nonimmigrant worker visa; they were unsuccessful. *Id.* at 380–81. Without any record in his possession or that the CBP officers could locate, Tsolmon was detained for a day and a half. *Id.* Finally, an officer, who may have been more proficient in computer searches but who still needed several hours of work, found the evidence of Tsolmon's H-1B. *Id.* at 381. The district court held that the discretionary function exception applied to the claim based on the original officer's investigation into Tsolmon's immigration status. *Id.* at 383. We held that the thoroughness of an investigation is a central decision for law enforcement officers to make, one that is inherently discretionary. *Id.*

Like Campos, Tsolmon relied on Section 1357(a)(2) to contend that the officers' conduct did not fall within the discretionary function exception. *Id.* at 382–83. We agreed with Tsolmon's broad characterization of the exception as not affording protection to officers who break the law or exceed their authority. *Id.* at 384. We explained, though, that the exception leaves officers

unprotected only when a statute or policy specifically directs them to act in a particular manner but the officers use their discretion to act in violation of that statute or policy. *Id.* We rejected Tsolmon's argument that the officers exceeded their authority under Section 1357(a)(2) when they detained him because "Section 1357(a)(2), with its judgment-laden 'reasonable belief' standard," is not a statute that gives specific direction to officers. *Id.*

The investigation in *Tsolmon* failed to uncover the needed documentation to show the alien's status. *Id.* at 380–81. According to Campos, that was not the problem here, as she had with her the documentation she needed. Campos argues that her removal was due to a failure by the investigating CBP officer to understand the legal effect of what was known even before any factual investigation was conducted. The CBP officer who initially met with Campos was Luis Oliva, who had been called by a probation officer after Campos presented herself at the probation office.

We perceive two ways to view where we are. One is to say that the case presents the issue of whether the failure to know the legal effect of documents that were in hand is in essence a failure to investigate the legal points more thoroughly. If so, does the discretionary function exception apply just as it does to a truncated investigation that did not uncover relevant facts? We do not rule from that perspective and leave that issue open. Another perspective is to say that regardless of what the EAD is best understood as meaning, no regulation or statute existed to indicate that meaning in such a way as to remove the CBP officer's discretion. We proceed down the path we see from that viewpoint.

The discretionary function exception would fail to protect the CPB officers if Section 1357(a)(2) specifically directed them to act in a particular manner but they used their discretion to act in violation of the statute. *Tsolmon,* 841 F.3d at 384. Campos contends that the officers violated Section

13

1357(a)(2) when they detained her because she presented them with a valid EAD that unequivocally established her lawful presence and because there was no factual basis to support that she was likely to escape, as she was present at the probation office on her own volition and was accompanied by her daughter and her daughter's father.

Campos has not presented us with a regulation or other authority that indicates that the "Category" section of an EAD reflects which subparagraph of 8 C.F.R. § 274a.12 is the source of the employment authorization. Even if such a regulation or directive in some other form exists, though, there was no regulation or other guidance to Oliva that "specifically prescribe[d] a course of action" when he was presented with an EAD, such that he had no discretion to conduct further investigation. *See Gaubert*, 499 U.S. at 322. Any shortcomings in the search for evidence of a visa fall in the category of investigatory discretion identified in *Tsolmon*.

Campos has also not shown how her voluntary presence at the probation office with her family precluded the CBP officers from having reason to believe that she was likely to escape. Before Oliva went to the probation office to meet with Campos, he reviewed documents that were associated with Campos's case, including the 2012 order of expedited removal, and was led to believe that Campos should have been removed from the country when she was released from prison. That Campos was, from Oliva's perspective, again impermissibly present in the United States would plausibly have given Oliva a reasonable belief that Campos would disappear before a warrant could be obtained.

Moreover, the 2012 order of expedited removal issued to Campos by an immigration officer provided for her expedited removal under Section 235(b)(1) of the Immigration and Nationality Act. 8 U.S.C. § 1225(b)(1). As that statute details, removal is without the benefit of a hearing or further review absent a claim for asylum (no such claim made here). *Id.* Once Campos was in the

14

custody of these CBP officers, and after they failed to find a justification that they understood had cancelled that order, they enforced the removal order they discovered by walking her across the nearby bridge into Mexico. Whether that was the correct action to take or not, we do not see that the issue of probability of escape has any relevance here.

As discussed before, the discretionary function exception applies if the relevant decision was a matter of choice and was "of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. We conclude that what Campos insists was certain from the EAD and removed all discretion was, in reality, sufficiently uncertain as to leave discretion in the hands of the CBP officers. The discretionary function exception exists to leave sovereign immunity in place unless the official had clear guidance on what to do when presented with what is argued to be the relevant evidence.

We conclude that the discretionary function exception applied.

Campos also argues that her Fourth Amendment rights were violated. "This court has not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception." *Spotts*, 613 F.3d at 569. We need not decide the issue here because we find the question not to be sufficiently raised. Campos cursorily mentioned the Fourth Amendment in her response to the Government's motion to dismiss. That passing reference did not address whether a Fourth Amendment violation barred the application of the discretionary function exception.

The inadequate presentation of the issue to the district court means any argument of error by the district court on the issue is waived on appeal. *Id.*

No. 16-51476

## IV.   *The law enforcement proviso*

We have already discussed Campos's argument that the "law enforcement proviso" of Section 2680(h) should control, and her suit for false arrest and false imprisonment should proceed under its terms.  We noted that in this circuit, the proviso and the discretionary function exception each have to be considered.  Now that we have held that the discretionary function exception is applicable, we need to determine if the proviso is as well.

Before reaching Campos's argument, we remind that the proviso is part of a subparagraph that first identifies an intentional tort exception.  The intentional torts there identified are statutorily excepted from the FTCA unless the proviso applies.  The Government, though, has not relied on the exception in Section 2680(h).  In its motion in district court, the Government sought dismissal based only on the discretionary function exception.  The motion mentioned the law enforcement proviso, but it did not seek dismissal under the intentional tort exception.  The Government did at least explain that the latter part of the FTCA retains sovereign immunity for claims involving false arrest and false imprisonment.

The only claims Campos identifies in her complaint are that she "was falsely arrested and falsely imprisoned by federal officers without [her] consent and without authority of law."  The intentional tort exception states that sovereign immunity is not waived for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  28 U.S.C. § 2680(h). Thus, under the FTCA as initially enacted, those intentional torts were not actionable against the United States. *Sutton*, 819 F.2d at 1294.   After troubling incidents of perceived misconduct by law enforcement officers, in 1974 Congress limited the exception by allowing suits that satisfy this proviso:

16

That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

28 U.S.C. § 2680(h); *see also Sutton*, 819 F.2d at 1295–97.

We start with what this Circuit has already held about the proviso, then address an important Supreme Court precedent that postdates our holdings and causes us to modify some of what we have previously held.

Despite the absolute nature of the language — seemingly unwaiving sovereign immunity for much of what was earlier waived in the same subsection — since 1987 this court has applied the proviso with considerable caution. *Cf. Sutton*, 819 F.2d at 1298. As we already described, *Sutton* treated the discretionary function exception and the law enforcement proviso as needing to coexist, as neither "exist[s] independently of the other nor does one predominate over the other." *Id.* at 1295. In that case, we focused on two events that led to Congress's adoption of the proviso: "The Senate Committee report states that the proviso was added to the FTCA in response to 'abusive, illegal, and unconstitutional "no-knock" raids' engaged in by federal narcotics agents in the Collinsville raids and in *Bivens* [*v. Six Unknown Named Agents of the Fed. Bureau of Investigation,* 403 U.S. 388 (1971).]" *Id.*

One way to interpret our holding is that the law enforcement proviso, allowing for suits to proceed, only applies in situations in which the kinds of egregious, intentional misconduct occurs that was present in the events that prompted Congress to adopt the proviso:

> The law enforcement proviso waives sovereign immunity and makes the United States responsible to citizens who are injured by law enforcement officers in situations like the Collinsville raids when relief was otherwise unavailable.

*Id.* at 1298.[4]   Besides that statement, though, *Sutton* also referred to the "categorical and unqualified" language of the proviso, such that there is government liability "whenever its agents commit constitutional torts and in any case in which a Federal agent commits acts which under accepted tort principles constitute one of the intentional torts enumerated in the proviso." *Id.* at 1296 (emphasis removed).

A later interpretation by this court of the proviso was in an opinion cited by the district court.  There a panel stated: "In harmonizing the two provisions in this case, [*i.e.*, the discretionary function exception and the law enforcement proviso,] it is significant that the [Immigration and Naturalization Service] officers did not commit a constitutional violation nor did they engage in any conduct that could be described as in bad faith." *Nguyen v. United States*, No. 02-10013, 2003 WL 1922969, at \*2 (5th Cir. Mar. 31, 2003).

Here, the district court relied on *Sutton* and *Nguyen* in concluding that "*Sutton*'s unmoored fact-intensive inquiry is anchored by *Nguyen*'s bad-faith framework."  The district court applied its understanding of our caselaw to conclude that the discretionary function exception applied, not the law enforcement proviso.

---

[4] Courts have continued to apply the intentional tort exception that precedes the proviso.  *See, e.g.*, *Snow-Erlin v. United States*, 470 F.3d 804, 808–09 (9th Cir. 2006) (holding claim that the plaintiff-decedent's release date was negligently calculated, leaving him in prison almost a year beyond when he should have been released, was barred by Section 2680(h)); *see also Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975) (concluding that the court's task is to determine whether the pleadings are clear that "the substance of [the] complaint is precisely the kind of tort enumerated in § 2680(h)," such as false imprisonment or arrest).

No. 16-51476

What neither the district court nor the parties' briefing discussed is a United States Supreme Court decision handed down after both *Sutton* and *Nguyen. See Millbrook v. United States,* 569 U.S. 50 (2013). We conclude that it controls our interpretation of the law enforcement proviso, meaning we can leave some of what *Sutton* meant unresolved. We now know other circuits' interpretive limits on the proviso were invalid. *Id.* at 55–57. The Court held there to be no implicit limits on the statutory language; the proviso "extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest." *Id.* at 57. The criteria for application of the proviso are *only* that the defendant have the right status, namely, that of an "investigative or law enforcement officer," and that acts or omissions of such an officer caused one of the six intentional torts to be committed. *Id.* at 54–55.

Though neither party cited *Millbrook* in the district court or here, it is a significant clarification of the law that should not be ignored. We apply *Millbrook*'s refusal to allow limitations to be placed on the law enforcement proviso to the law of this Circuit. That law, unaffected on this point, is that both the proviso and the discretionary function exception must be read together. *Sutton*, 819 F.2d at 1295. In other words, one does not moot the other when both cover a fact pattern. *Id.* at 1297.

The best way to blend the "on the one hand," with the "on the other" nature of these dueling provisions, is first to determine if the law enforcement proviso applies. It does. The CBP officers were law enforcement officers whose acts or omissions are claimed to have caused one of the relevant six torts. Having made that decision, we turn to the discretionary function exception. We already analyzed that exception and held the officers' decisions to have been matters of choice that traditionally would be shielded from liability. What

19

would not be shielded from liability is defined by the *Sutton* court's focus on Collinsville and *Bivens* situations.  We leave that much of *Sutton* undisturbed because under this Circuit's rule of orderliness, a prior opinion remains binding except to the extent of the Supreme Court's change in the law.  *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).

It is enough to hold, and we do, that the conduct alleged here in no respect sinks to the necessary level.  At worst, what occurred were failures to understand the import of various immigration documents and regulations.  Reading the discretionary function exception in conjunction with the law enforcement proviso, we conclude the district court was correct in holding there is no subject matter jurisdiction.

The district court did err, though, in dismissing Campos's FTCA claims with prejudice.  Though Campos has not raised this issue, we agree with a prior opinion from this court that such an error cannot be waived.  *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 456 (5th Cir. 2013).  We agree with our prior cases that have precluded district courts from dismissing plaintiffs' claims with prejudice when the basis for the dismissal is lack of subject matter jurisdiction under Rule 12(b)(1).  *See, e.g.*, *Nevarez Law Firm, P.C. v. Dona Ana Title Co.*, 708 F. App'x 186, 187 (5th Cir. 2018).  The district court was without jurisdiction over Campos's FTCA claims; thus, it was without authority to dismiss the claims with prejudice because "[a] dismissal with prejudice is a final judgment on the merits" of a case.  *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003).

We AFFIRM as to the dismissal of the complaint but VACATE and REMAND so that the district court may enter a revised order and final judgment that dismisses the suit without prejudice.